# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| **ROBERT LANCE JOHANSEN as** | ) | |
| **administrator of the estate of** | ) | |
| **LAUREN JOHANSEN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **3:25-cv-_____** |
| | ) | |
| **BROOKE'S BAIL BONDING, LLC,** | ) | **Judge _____** |
| **FREEDOM MONITORING SERVICES,** | ) | **JURY TRIAL DEMANDED** |
| **LLC, TYRELL WHITE d/b/a ON TIME** | ) | |
| **BAIL BONDING, BROOKE** | ) | |
| **HARLAN-EVITTS, JAY OTEY, NEICOLA** | ) | |
| **McMILLIAN, NAKEDA WILHOITE,** | ) | |
| **ALISHA RIDLEY, AMERICAN** | ) | |
| **CONTRACTORS INDEMNITY CO., and** | ) | |
| **CONTINENTAL HERITAGE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Brooke's Bail Bonding, LLC and On Time Bonding, along with the other Defendants, are responsible for the release from custody, in violation of court order, of the killer who murdered Plaintiff's daughter. The man they set free had been charged with multiple felony offenses because he had previously kidnapped and savagely beaten this young woman.

Defendants arranged for this killer to be set free without requiring payment even of his full bond premium. Defendants let him travel to Mississippi, where his intended victim had sought sanctuary, despite unequivocal instructions of the court that he remain under continuous electronic monitoring in Davidson County. Defendants let him return to Mississippi where he beat and

1

murdered this young lady even though they knew or should have known he had violated the conditions of his bond.

In these and all other respects, Defendants ignored or violated their obligations and/or duties in the performance, for private profit, of functions traditionally chargeable to the State, in conjunction with State actors, and pursuant to authority granted them by the State. Their misconduct thwarted the strict edicts of the court, intended to protect a victim of violent crime from further harm. Their dereliction of duty was a direct and proximate cause of the brutal killing of Ms. Johansen.

## **PARTIES**

1.     Brooke's Bail Bonding, LLC ("Brooke's Bonding") is a limited liability company organized under the laws of Tennessee. Brooke's Bonding's sole member is Defendant Brooke Harlan-Evitts, who resides in this judicial district. Brooke's Bonding is authorized by the 20th Judicial District of Tennessee pursuant to Tennessee law to enter agreements with or on behalf of criminal defendants to post bonds with the Davidson County criminal courts to effectuate the release of criminal defendants.

2.     On Time Bail Bonding ("On Time Bonding") is a sole proprietorship owned by Tyrell White, who resides in this judicial district. On Time Bonding is authorized by the 20th Judicial District of Tennessee pursuant to Tennessee law to enter agreements with or on behalf of criminal defendants to enter agreements with or on behalf of criminal defendants to post bonds with the Davidson County criminal courts to effectuate the release of criminal defendants.

3.     Freedom Monitoring Services, LLC ("Freedom Monitoring") is a limited liability company organized under the laws of Tennessee.

2

4.     Brooke Harlan-Evitts resides in this judicial district.  Ms. Harlan-Evitts is the owner of Brooke's Bonding

5.     Nakeda Wilhoite resides in this judicial district.  At all times herein described, Ms. Wilhoite worked as an agent and/or employee of Brooke's Bonding.  At all times herein described, Ms. Wilhoite was also the owner of Freedom Monitoring Services

6.     Neicola McMillian resides in this judicial district.  At all times herein described, Ms. McMillian worked as an agent and/or employee of Brooke's Bonding.

7.     Alisha Ridley resides in this judicial district.  At all times herein described, Ms. Ridley worked as an agent and/or employee of Brooke's Bonding.

8.     Jay Otey resides in this judicial district.  At all times herein described, Mr. Otey worked as an agent and/or employee of On Time Bonding.

9.     American Contractors Indemnity Company is a corporation incorporated under the laws of California with principal place of business in Los Angeles, California.  American Contractors Indemnity Company provided collateral to On Time Bonding in furtherance of their bail bonding joint venture and/or partnership.

10.    Continental Heritage Insurance Company is a corporation incorporated under the laws of Florida with principal place of business in Orange Village, Ohio.  Continental Heritage Insurance Company provided collateral to Brooke's Bonding in furtherance of their bail bonding joint venture and/or partnership.

11.    Plaintiff Robert Lance Johansen is the father of the decedent Lauren Johansen.  He is a resident of Vancleave, Mississippi.  By Order entered June 2, 2025, the Probate Court for Davidson County, Tennessee, appointed Plaintiff Robert Lance Johansen as the administrator of

the estate of Lauren Johansen, who was a resident of Hattiesburg, Mississippi at the time of her death.

## JURISDICTION AND VENUE

12.     The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

13.     The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims that they form part of the same case and controversy.

14.     The Court has also has subject-matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff, as administrator of Lauren Johansen's estate, and all Defendants, and the amount in controversy exceeds $75,000.

15.     The Court has general personal jurisdiction over Defendants Brooke's Bonding, LLC, Wilhoite, McMillian, Freedom Monitoring Services, LLC, Harlan-Evitts, White d/b/a On Time Bonding, Otey, and Ridley because they are all residents of Tennessee.

16.     The Court has specific personal jurisdiction over Defendant American Contractors Indemnity Corporation because it partnered with On Time Bonding to provide bail bonding services in Tennessee, and this action arises out of On Time Bonding's negligent, reckless, malicious, and/or deliberately indifferent conduct in providing such bail bonding services.

17.     The Court has specific personal jurisdiction over Defendant Continental Heritage Insurance Company because it partnered with Brooke's Bonding to provide bail bonding services in Tennessee, and this action arises out of Brooke's Bonding's negligent, reckless, malicious, and/or deliberately indifferent conduct in providing such bail bonding services.

4

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## FACTS

### Bail Bonding in Tennessee

19.     Article 1, §15 of the Tennessee Constitution guarantees the right to bail except where a criminal defendant has been charged with a capital offense.

20.     Tennessee allows private bail bonding services, operating individually or as a business association, to discharge this right for profit.

21.     Once a criminal court sets the amount of a criminal defendants bail bond, bail bonding services accept a premium from a criminal defendant, or from some third-party on behalf of the criminal defendant, that is a fraction of the total value of the bond required by the criminal court. The bail bonding service will then post a bond in the full amount required by the court to allow for the criminal defendant's release pending the conclusion of the criminal proceedings against that criminal defendant.

22.     This bond is intended to secure the criminal defendant's appearance at any subsequent hearing.  If the defendant does not appear, the bond should be forfeited.

23.     Bail bonding services in Tennessee are regulated by statute and by the criminal courts of the county in which the bail bonding service operates.

24.     Criminal courts in Davidson County license certain bail bonding services, which allows them to operate within the county.

25.     In order to receive a license to operate within Davidson County, a bail bonding service must meet certain requirements.  The Davidson County Criminal Courts are responsible

for ensuring that any prospective bail bonding service meets these requirements, and are empowered to oversee and ensure that the bail bonding service maintains these requirements if its licensing is approved.

26.     The Davidson County Criminal Courts are also empowered to revoke the license of a bail bonding service.

27.     Because nearly all criminal defendants, including those charged with violent felonies, are entitled to the opportunity to bail under the Tennessee Constitution, the Tennessee General Assembly passed statutes empowering criminal courts to impose conditions on the bail of criminal defendants who have been charged with certain violent offenses in order to maintain public safety and to maintain the safety of the victims of the crimes for which violent criminal defendants are being charged.

28.     These conditions commonly include geographic restrictions that protect the victim of the criminal defendant's violent crimes from further harm.  These geographic restrictions are typically maintained via a monitoring device, often attached at the ankle.

29.     Many states maintain direct responsibility for ensuring that criminal defendants comply with conditions of their bail, particularly geographic restrictions.  In Tennessee, however, the state contracts with private services and directly or indirectly with third-party insurance companies or consortiums to assure compliance with the financial conditions of bond.

30.     In Davidson County, Tennessee, the private bail bonding service who posts a criminal defendant's bond and a member of Davidson County Sheriff's Department and/or criminal court staff bonding service share the responsibilities of ensuring the public, including any victim of the defendant's crime, is protected from the violent criminal defendant who is released on bail.

31.     Tennessee law authorizes private bail bonding services to arrest, without a warrant, the criminal defendants for whom they have posted bond in order to surrender the defendant back into state custody.

32.     Defendants Brooke's Bonding and On Time Bonding are bail bonding services authorized by the Davidson County Criminal Courts to market their services in Davidson County. Defendants Harlan-Evitts, Wilhoite, Ridley, McMillian, Otey, and White are bail bondsmen who are licensed by the Davidson County Criminal Courts, pursuant to Tennessee statute, to post bonds on behalf of criminal defendants. Freedom Monitoring provides ankle monitors and GPS monitoring services to Brooke's Bonding as part of Brooke's Bonding's bail bonding activities. Plaintiff will refer to these individuals and entities collectively as the "Bail Bonding Defendants" throughout the Complaint.

33.     Bail bonding services in Tennessee are also required by statute to maintain sufficient liquidity to ensure funds are available when a bond is forfeited.

34.     As an alternate means of satisfying the liquidity requirement, many bail bonding services maintain only minimal liquidity and instead enter into joint venture agreements with an insurance company to provide financial assurance that any forfeited bond will be paid.

35.     When a bail bonding service opts to partner with an insurance company, the bail bonding service pays premiums to the insurance company, who then agrees to pay in instances where the bail bonding service is ordered to forfeit a bond, most often because a defendant failed to attend a court hearing.  In so doing, the bail bonding service and insurance company share both the profits and the risks of the bail bonding venture.

7

36.     The funds that the bonding company uses to pay premiums to these insurance companies are derived from the money paid by or on behalf of criminal defendants to retain the bail bonding service.

37.     Defendants American Contractors Indemnity Company ("ACIC") and Continental Heritage Insurance Company ("CHIC") are insurance companies who have partnered with bail bonding services in order to share in the profits obtained by those bail bonding services. Plaintiff will refer to these insurance companies jointly as "Insurance Defendants" throughout the Complaint.

38.     At all times herein described, On Time Bonding contracted with ACIC in order to post bonds for criminal defendants, including Bricen Rivers. On Time Bonding filed proof of this contract with the Criminal Court in order to receive authorization from the Court to issue bonds.

39.     At all times herein described, Brooke's Bonding with CHIC in order to post bonds for criminal defendants, including Bricen Rivers.

40.     By contracting with ACIC, On Time Bonding formed a joint venture and/or partnership with ACIC. On Time Bonding bore the responsibility for many traditional aspects of its bail bonding services, including, *inter alia*, finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with conditions of bail, and ensuring the defendant appeared for his or her court hearings. ACIC bore responsibility for paying forfeited bonds and approved or denied proposals from On Time Bonding to post a bond for a particular criminal defendant. On Time Bonding and ACIC shared profits for this joint venture and/or partnership in the form of premium payments remitted by On Time Bonding to ACIC.

41.     By contracting with CHIC, Brooke's Bonding formed a joint venture and/or partnership with CHIC. Brooke's Bonding bore the responsibility for many traditional aspects of

its bail bonding services, including, *inter alia*, finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with conditions of bail, and ensuring the defendant appeared for his or her court hearings. CHIC bore responsibility for paying forfeited bonds and approved or denied proposals from Brooke's Bonding to post a bond for a particular criminal defendant. Brooke's Bonding and CHIC shared profits for this joint venture and/or partnership in the form of premium payments remitted by Brooke's Bonding to CHIC.

### The Events Leading to Lauren Johansen's Death

42. On or about December 11, 2023, nonparty Bricen Rivers, a resident of Mississippi, came to Nashville, Tennessee with Decedent Lauren Johansen.

43. At or around that time, Bricen Rivers repeatedly battered Ms. Johansen and, as a result of these actions, was arrested for felony especially aggravated kidnapping.

44. Bricen Rivers was charged with three felonies arising from his assault of Ms. Johansen: Especially aggravated kidnapping, aggravated stalking, and coercion of a witness.

45. Bricen Rivers's criminal case was assigned to Judge Blackburn in Division III of Davidson County's Criminal Court.

46. Mr. Rivers's bail was initially set at $250,000.

47. Based on the efforts of Mr. Rivers's mother, Chelsa Rivers, the criminal court lowered Bricen Rivers's bail to $150,000 by order entered April 3, 2024.

48. The April 3, 2024, order also stated that if Bricen Rivers posted bond the following conditions would apply:

   a. "He is to live in Davidson County, Tennessee. He must supply the court with the address at which he will be living."
   b. "He is to be placed on electronic monitoring."
   c. "He is not to have any contact, either in person or through anyone else, with Ms. Johansen or any other potential witness in this case."
   d. "He is not to possess weapons of any kind."

9

e.    "He is to have no new arrests."

49.    Chelsa Rivers began communicating with bonding companies to find one willing to post a bond for Bricen Rivers's bail.

50.    Ms. Rivers contacted nonparty Elite Bonding, who initially agreed to post Mr. Rivers's bond.

51.    The Court convened a bond hearing on June 4, 2024.

52.    After the bond hearing, Elite Bonding informed Chelsa Rivers that it would not be able to post Bricen Rivers's bond.

53.    Elite Bonding referred Ms. Rivers to Defendant Brooke's Bonding.

54.    Brooke's Bonding agreed to cover $75,000 of the $150,000 bail for the price of $6,000.

55.    An agent of Brooke's Bonding then contacted Defendant On Time Bonding, who agreed to cover the other $75,000, for payment of a fee of $6,000.

56.    As a result of the change in bonding companies, the Court convened a second bond hearing on June 5, 2024.

57.    At the June 5, 2024, bond hearing, Judge Blackburn set bond conditions, consistent with the April 3, 2024, order, requiring that Bricen Rivers:

    a.    Wear a GPS bracelet.
    b.    Stay in Davidson County.
    c.    Reside at 1256 Avondale Cir., Nashville, TN 37207
    d.    Stay away from alleged victim Lauren Johansen or other witnesses.
    e.    Refrain from alcohol and drug use.
    f.    Possess no weapons.
    g.    Not be arrested again.
    h.    Report to Stephanie Krivcher.
    i.    And have Absolutely no contact with the alleged victim.

58.    The court memorialized its ruling in an order reflecting these bond conditions.

10

59.     Defendant McMillian signed the order on behalf of Brooke's Bonding.

60.     Defendant Otey signed the order on behalf of On Time Bonding.

61.     By June 24, 2024, Brooke's Bonding had collected $4,500 from Ms. Rivers, and On Time Bonding had collected $3,000 from Ms. Rivers.

62.     On June 24, 2024, Brooke's Bonding and On Time Bonding each posted a $75,000 bond to the Davidson County Warrant and Bond Office, which is a division of the Davidson County Sheriff's Department.

63.     Agents from Brooke's Bonding and On Time Bonding departed the Davidson County Warrant and Bond Office without custody of Bricen Rivers. Despite knowing that the court would typically impose conditions for release of a defendant facing felony charges, the agents from Brooke's Bonding and On Time Bonding failed to request copies of the court order or to otherwise obtain any information concerning the terms of Bricen Rivers's release.

64.     Later in the afternoon of June 24, 2024, Defendant Ridley received a phone call from Bricen Rivers, who had been released from jail.

65.     Ridley picked up Bricen Rivers and returned him to Brooke's Bonding's office.

66.     Ridley contacted Wilhoite, who told Ridley to use one of Freedom Monitoring's GPS ankle monitors that was already in Brooke's Bonding's office.

67.     Ridley affixed the ankle monitor but did not program the monitor so that an alert would go out if Rivers left Davidson County.

68.     Chelsa Rivers sent Brooke's Bonding an additional $130 to pay for a bus ticket so that Bricen Rivers could travel to Mississippi.

69.     The Bail Bonding Defendants then released Bricen Rivers from Brooke's Bonding's office and facilitated his travel to Mississippi using the money Chelsa Rivers had sent Brooke's Bonding for the bus ticket.

70.     Upon his release, Bricen Rivers traveled to Mississippi by bus.

71.     The Bail Bonding Defendants knew Bricen Rivers had left Davidson County and Tennessee and therefore was in violation of the conditions of his bond.

72.     On June 27, 2024, the Bail Bonding Defendants began having issues with Bricen Rivers's ankle monitor.  They asked him to return to Brooke's Bonding's office to make necessary adjustments.

73.     By June 28, 2024, all Bail Bonding Defendants knew that Bricen Rivers was not allowed to leave Davidson County and knew of all of the conditions of his bail.

74.     On June 29, 2024, Bricen Rivers arrived at Brooke's Bonding's office to meet Wilhoite, who was acting on behalf of both Brooke's Bonding and Freedom Monitoring.

75.     The Bail Bonding Defendants were aware that Bricen Rivers had returned to Brooke's Bonding's office.

76.     Ms. Ridley had also planned to be at Brooke's Bonding's office on June 29, 2024, to meet Bricen Rivers but claims to have been unable to do so due to a personal matter

77.     Brooke's Bonding failed to have any policy or procedure in place for coverage in the event of such an eventuality.

78.     Bricen Rivers informed Wilhoite that he had been and would continue to be unable to stay at the Nashville address listed in the conditions of his bail.

79.     Wilhoite placed a new ankle monitor on Bricen Rivers.

80.     Wilhoite did not program the ankle monitor to inform the Bail Bonding Defendants if Bricen Rivers left Davidson County, Tennessee or to otherwise monitor Bricen Rivers in accordance with the Court's directions.

81.     The Bail Bonding Defendants knew that between June 24 and June 29, 2024, Bricen Rivers had violated his bail conditions by leaving Davidson County.

82.     The Bail Bonding Defendants nonetheless released Bricen Rivers from Brooke's Bonding and allowed him to return to his vehicle on June 29, 2024.

83.     Harlan-Evitts, who at all relevant times had managerial and policy-making authority for Brooke's Bonding, authorized the release of Bricen Rivers.

84.     Following his release, Bricen Rivers immediately began traveling to Southern Mississippi.

85.     Because Bricen Rivers was wearing a GPS ankle monitor, the Bail Bonding Defendants have admitted that they knew, and they certainly should have known, Bricen Rivers's location and that he was leaving Davidson County and Tennessee.

86.     Upon realizing that Bricen Rivers had left Davidson County, none of the Bail Bonding Defendants contacted authorities in Tennessee to attempt to apprehend him.

87.     Upon realizing that Bricen Rivers had left Tennessee, none of the Bail Bonding Defendants contacted authorities in Mississippi to warn them that a violent criminal had violated the conditions of his bond and fled Tennessee.

88.     Upon realizing that Bricen Rivers had left Davidson County, none of the Bail Bonding Defendants contacted Lauren Johansen or any of her family to warn them that Bricen Rivers had returned to Southern Mississippi.

89. Despite knowledge of Bricen Rivers's bond conditions, knowledge that Bricen Rivers was in violation of those bond conditions, and knowledge that those bond conditions were put in place to protect Lauren Johansen, the Bail Bonding Defendants did not undertake any legitimate efforts to prevent or impede Bricen Rivers from violating the conditions of his bond.

90. On July 2, 2024, after returning to Mississippi, Bricen Rivers kidnapped, assaulted, and ultimately killed Lauren Johansen.

## COUNT I

### Wrongful Death (Bail Bonding Defendants)

91. Plaintiff incorporates Paragraphs 1 through 90 of the Complaint as though alleged herein.

92. Plaintiff is the administrator of Lauren Johansen's estate and brings this wrongful death action on behalf of Lauren Johansen's statutory wrongful death beneficiaries to recover damages for Ms. Johansen's lost wages and pain and suffering, as well as the economic benefit Ms. Johansen's beneficiaries would have expected to receive from Lauren Johansen in the form of support, services, or contributions during Lauren Johansen's life had she not died as a result of the Bail Bonding Defendants' acts and/or omissions.

93. The Bail Bonding Defendants each had a duty to ensure that Bricen Rivers complied with the conditions of his bail, including remaining in Davidson County and staying away from Lauren Johansen.

94. The Bail Bonding Defendants had a duty to monitor Bricen Rivers's location.

95. The Bail Bonding Defendants knew that Bricen Rivers posed a significant risk of harm to Lauren Johansen.

14

96.     The Bail Bonding Defendants knew that Bricen Rivers had violated the conditions of his bail.

97.     The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by not making a reasonable inquiry into the conditions of Bricen Rivers's bail at the time they agreed to put up a bond for his release.

98.     The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by releasing Bricen Rivers despite actual and/or constructive knowledge that he had violated the conditions of his bail by leaving Davidson County.

99.     The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by releasing Bricen Rivers with no safeguards in place to prevent him from traveling to Mississippi.

100.    The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to put in place any safeguards to inform them if Bricen Rivers traveled outside of Davidson County.

101.    The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to inform authorities in Mississippi that Bricen Rivers had traveled to Mississippi.

102.    The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to inform Lauren Johansen, the victim of Bricen Rivers's prior crime, or Plaintiff, a witness against Bricen Rivers, that Bricen Rivers had traveled to Mississippi.

103.    As a result of the Bail Bonding Defendants' negligent, reckless, and/or malicious actions and/or omissions, Bricen Rivers was able to return to Mississippi, find Lauren Johansen, and kidnap, batter, and kill her.

104.    The Bail Bonding Defendants are liable for all damages recoverable by law for Lauren Johansen's wrongful death.

105.    Brooke's Bonding is vicariously liable for the wrongful conduct of Defendants Wilhoite, Ridley, McMillian, Harlan-Evitts under the doctrine of *respondeat superior*.

106.    White d/b/a On Time Bonding is vicariously liable for the wrongful conduct of Defendant Otey under the doctrine of *respondeat superior*.

107.    Freedom Monitoring is vicariously liable for the wrongful conduct of Defendant Wilhoite under the doctrine of *respondeat superior*.

## COUNT II

### 42 U.S.C. § 1983 (Bail Bonding Defendants)

108.    Plaintiff incorporates Paragraphs 1 through 107 of the Complaint as though alleged herein.

109.    At all times described herein, the Bail Bonding Defendants were exercising authority granted to them by the State of Tennessee and the Davidson County Criminal Court to provide surety on behalf of criminal defendants.

110.    At all times described herein, the Bail Bonding Defendants were exercising authority granted to them by the State of Tennessee and the Davidson County Criminal Court to supervise pretrial detainees charged with violent offenses.

111.    At all times described herein, the Bail Bonding Defendants were carrying out the duty of ensuring Bricen Rivers remained in Davidson County, away from Lauren Johansen, and available for his next Court hearing.  These duties would have otherwise been chargeable to the State.

112.    At all times described herein, the Bail Bonding Defendants were acting together with the Davidson County Criminal Court, State Trial Court Employee Stephanie Krivcher, and

16

the Davidson County Sheriff's Office to supervise and ensure Bricen Rivers's compliance with the conditions of his bail.

113.    The Bail Bonding Defendants became aware of all of the conditions of Bricen Rivers's bail, including the condition that he remain in Davidson County.

114.    The Bail Bonding Defendants were also aware that Bricen Rivers had violated the conditions of his bail by traveling to Mississippi.

115.    Notwithstanding actual knowledge of the significant danger Bricen Rivers posed to Ms. Johansen, the conditions the criminal court placed on Bricen Rivers's bail, and the fact that Bricen Rivers had already violated the conditions of his bail, the Bail Bonding Defendants released Bricen Rivers to return to Mississippi on June 29, 2024.  No attempt was made to arrest or detain him, no effort was made to contact authorities in Tennessee or Mississippi, Lauren Johansen, Plaintiff to warn them about the dangerous criminal defendant who had violated the conditions of his bail.

116.    The Bail Bonding Defendants' action of releasing Bricen Rivers created a substantial risk that Ms. Johansen would be subjected to violence at Bricen Rivers's hands.

117.    The Bail Bonding Defendants acted with deliberate indifference to the extreme threat that Bricen Rivers posed to Lauren Johansen by releasing him.

118.    As a result of the Bail Bonding Defendants' actions, Ms. Johansen was kidnapped, beaten, and killed in violation of her constitutional rights.

119.    Additionally, at all times herein described, Brooke's Bonding, On Time Bonding, and Freedom Monitoring, as business entities, had a policy, custom, and/or practice of releasing pretrial detainees charged with violent criminal offenses with no safeguards in place to ensure the pretrial detainee would comply with the conditions of his or her bail.

17

120. At all times herein described, Brooke's Bonding, On Time Bonding, and Freedom Monitoring had a policy, custom, and/or practice of failing to adequately train its employees, agents, and/or contractors about when it is appropriate to release a criminal defendant charged with violent felonies.

121. At all times herein described, Brooke's Bonding, On Time Bonding, and Freedom Monitoring had a policy, custom, and/or practice of using unapproved GPS Monitoring services in an attempt to satisfy the GPS Monitoring conditions on a criminal defendants' bail.

122. The policies, customs, and/or practices of Brooke's Bonding, On Time Bonding, and Freedom Monitoring demonstrated a deliberate indifference towards the lives of victims of violent crime.

123. That the victim of a violent crime would be kidnapped, injured, and/or killed by a pretrial detainee charged with a violent crime and released without supervision was an obvious and foreseeable consequence of the policies, customs, and/or practices of Brooke's Bonding, On Time Bonding, and Freedom Monitoring.

124. At all times herein described, Defendants Harlan-Evitts, Wilhoite, McMillian, and Ridley had policymaking and/or managerial authority for Brooke's Bonding by title, custom, and practice.

125. At all times herein described, Defendants White and Otey had policymaking and/or managerial authority for On Time Bonding by title, custom, and practice.

126. At all times herein described, Defendant Wilhoite had policymaking and/or managerial authority for Freedom Monitoring by title, custom, and practice.

127. At all times herein described, Defendants Harlan-Evitts, Wilhoite, McMillian, Ridley, White, and Otey were exercising their policymaking and/or managerial authority.

18

128. The Bail Bonding Defendants' private conduct is fairly attributable to the State of Tennessee because they received state authority to post bail bonds, worked in conjunction with state employees, and were performing a duty that Tennessee and Davidson County would otherwise be required to perform pursuant to the Constitution of Tennessee.

129. As a result of the Bail Bonding Defendants' deliberate indifference towards the risk Bricen Rivers posed to Lauren Johansen, Ms. Johansen lost her life in violation of her Constitutional rights.

130. Accordingly, the Bail Bonding Defendants are liable under 42 U.S.C. § 1983 for all damages and remedies recoverable under 42 U.S.C. § 1988, including but not limited to compensatory damages, punitive damages, attorneys' fees, and expert fees.

## COUNT III

### Joint Venture (Brooke's Bonding and On Time Bonding)

131. Plaintiff incorporates Paragraphs 1 through 130 of the Complaint as though alleged herein.

132. Brooke's Bonding and On Time Bonding expressly agreed to each post $75,000 of Bricen Rivers's $150,000 bail.

133. Brooke's Bonding and On Time Bonding expressly agreed to the joint purpose of each posting $75,000 towards Bricen Rivers's $150,000 bond, for the purpose of securing Bricen Rivers's release from custody.

134. Brooke's Bonding and On Time Bonding had the common purpose of profiting off of the fee associated with Bricen Rivers's bail bond and ensuring Bricen Rivers complied with his bond conditions and appeared at his next criminal court hearing.

19

135.     Brooke's Bonding and On Time Bonding had an equal right to control Bricen Rivers.

136.     Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's and On Time Bonding's negligent, reckless, and/or intentional acts pursuant to their joint venture, they should be held jointly and severally liable for any judgment awarded to Plaintiff against either of them.

<u>**COUNT IV**</u>

**Joint Venture (Brooke's Bonding and Freedom Monitoring)**

137.     Plaintiff incorporates Paragraphs 1 through 136 of the Complaint as though alleged herein.

138.     Brooke's Bonding entered into an agreement with Freedom Monitoring for the common purpose of ensuring that Bricen Rivers would be under GPS monitoring through the use of an ankle monitor, and thereby ensure that Bricen Rivers remained in compliance with the conditions of his release.

139.     Wilhoite, who authorized Ridley to affix the ankle monitor to Bricen Rivers, was an agent and/or employee of both Brooke's Bonding and Freedom Monitoring.

140.      At all times described herein, Wilhoite acted in her capacity as agent and/or employee of both Brooke's Bonding and Freedom Monitoring.

141.     Brooke's Bonding and Freedom Monitoring had an equal right to control the electronic monitoring of Bricen Rivers.

142.     Because Lauren Johansen  was injured and killed as a result of Brooke's Bonding's and Freedom Monitoring's negligent, reckless, and/or intentional acts pursuant to their joint

venture, they should be held jointly and severally liable for any judgment awarded to Plaintiff against either of them.

## COUNT V

### Joint Venture/Partnership Liability
### (On Time Bonding and ACIC)

143.     Plaintiff incorporates Paragraphs 1 through 142 of the Complaint as though alleged herein.

144.     On Time Bonding and ACIC entered into an agreement for the common purpose of posting bonds for criminal defendants in Davidson County, Tennessee for profit.

145.     On Time Bonding and ACIC combined their property, labor, experience, and/or money in order to carry out this common purpose.

146.     On Time Bonding and ACIC shared the profits gained from this agreement in the form of splitting the fees paid by criminal defendants to On Time Bonding.

147.     On Time Bonding and ACIC had an equal right to control decisions about which criminal defendants On Time Bonding would post a bond to secure their release.

148.     Because Lauren Johansen was injured and killed as a result of On Time Bonding's negligent, reckless, and/or intentional acts pursuant to their joint venture and/or partnership, ACIC is vicariously and jointly and severally liable for any judgment awarded against On Time Bonding.

## COUNT VI

### Joint Venture/Partnership Liability
### (Brooke's Bonding and CHIC)

149.     Plaintiff incorporates Paragraphs 1 through 148 of the Complaint as though alleged herein.

21

150.    Brooke's Bonding and Continental Heritage Insurance Company entered into an agreement for the common purpose of posting bonds for criminal defendants in Davidson County, Tennessee for profit.

151.    Brooke's Bonding and Continental Heritage Insurance Company combined their property, labor, experience, and/or money in order to carry out this common purpose.

152.    Brooke's Bonding and Continental Heritage Insurance Company shared the profits gained from this agreement in the form of splitting the fees paid by criminal defendants to Brooke's Bonding.

153.    Brooke's Bonding and Continental Heritage Insurance Company had an equal right to control decisions about which criminal defendants Brooke's Bonding would post a bond to secure their release.

154.    Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's negligent, reckless, and/or intentional acts pursuant to their joint venture and/or partnership, Continental Heritage Insurance Company is vicariously and jointly and severally liable for any judgment awarded against Brooke's Bonding.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1.    That proper process issue and be served upon Defendants, requiring them to appear and answer this Complaint;

2.    That Plaintiff be awarded damages in the amount of $50,000,000.00 in compensatory damages for Defendants' violations of Lauren Johansen's constitutional rights and for her wrongful death as a result of Defendants' negligence, recklessness, intentional, and/or malicious acts and/or omissions;

3.      That Plaintiff be awarded punitive damages for Defendants' intentional, fraudulent, malicious, and/or reckless conduct in the amount of $100,000,000.00;

4.      That the Court hold defendants jointly and severally liable for all damages attributable to any individual defendant;

5.      That Plaintiff be awarded his reasonable attorneys' and experts' fees to the extent allowed by law;

6.      That the Court empanel a jury of six to hear this cause;

7.      That the Court tax the costs of this action to Defendants; and

8.      That the Court award such other and further relief as it deems appropriate.

Respectfully submitted,

**NEAL & HARWELL, PLC**

*/s/ Philip N. Elbert*
Philip Elbert, # 009430
Elizabeth Tipping, # 023066
Satchel Fowler, # 039624
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: (615) 244-1713
Facsimile: (615) 726-0573
pelbert@nealharwell.com
etipping@nealharwell.com
sfowler@nealharwell.com

23