**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE**

| | | |
|---|---|---|
| ROBERT LANCE JOHANSEN as administrator of the estate of LAUREN JOHANSEN, | ) ) ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **3:25-cv-00690** |
| | ) | |
| BROOKE'S BAIL BONDING, LLC, | ) | **Judge Aleta Trauger** |
| FREEDOM MONITORING SERVICES, | ) | **JURY TRIAL DEMANDED** |
| LLC, TYRELL WHITE d/b/a ON TIME | ) | |
| BAIL BONDING, BROOKE | ) | |
| HARLAN-EVITTS, JAY OTEY, NEICOLA | ) | |
| McMILLIAN, NAKEDA WILHOITE, | ) | |
| ALISHA RIDLEY, AMERICAN | ) | |
| CONTRACTORS INDEMNITY CO., and | ) | |
| CONTINENTAL HERITAGE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

Brooke's Bail Bonding, LLC and On Time Bonding, along with the other Defendants, are responsible for the release from custody, in violation of court order, of the killer who murdered Plaintiff's daughter. The man they set free had been charged with multiple felony offenses because he had previously kidnapped and savagely beaten this young woman.

Defendants arranged for Lauren Johansen's killer to be set free without requiring payment even of his full bond premium. Defendants let him travel to Mississippi, indeed facilitated his return to Mississippi, where his intended victim had sought sanctuary, despite unequivocal instructions of the court that he remain under continuous electronic monitoring in Davidson

County. Defendants let him return to Mississippi where he beat and murdered this young lady even though they knew or should have known he had violated the conditions of his bond.

In these and all other respects, Defendants ignored or violated their obligations and/or duties in the performance, for private profit, of functions traditionally chargeable to the State, in conjunction with State actors, and pursuant to authority granted them by the State. Their misconduct thwarted the strict edicts of the court, intended to protect a victim of violent crime from further harm. Their dereliction of duty was a direct and proximate cause of the brutal killing of Ms. Johansen.

**PARTIES**

1. Brooke's Bail Bonding, LLC ("Brooke's Bonding") is a limited liability company organized under the laws of Tennessee. Brooke's Bonding's sole member is Defendant Brooke Harlan-Evitts, who resides in this judicial district. Brooke's Bonding is authorized by the 20th Judicial District of Tennessee pursuant to Tennessee law to enter agreements with or on behalf of criminal defendants to post bonds on their behalf with the Davidson County criminal courts.

2. On Time Bail Bonding ("On Time Bonding") is a sole proprietorship owned by Tyrell White, who resides in this judicial district. On Time Bonding is authorized by the 20th Judicial District of Tennessee pursuant to Tennessee law to enter agreements with or on behalf of criminal defendants to enter agreements with or on behalf of criminal defendants to post bonds on their behalf with the Davidson County criminal courts.

3. Freedom Monitoring Services, LLC ("Freedom Monitoring") is a limited liability company organized under the laws of Tennessee.

4. Brooke Harlan-Evitts resides in this judicial district. Ms. Harlan-Evitts is the owner of Brooke's Bonding.

5. Nakeda Wilhoite resides in this judicial district. At all times herein described, Ms. Wilhoite worked as an agent and/or employee of Brooke's Bonding. At all times herein described, Ms. Wilhoite was also the owner of Freedom Monitoring Services.

6. Neicola McMillian resides in this judicial district. At all times herein described, Ms. McMillian worked as an agent and/or employee of Brooke's Bonding.

7. Alisha Ridley resides in this judicial district. At all times herein described, Ms. Ridley worked as an agent and/or employee of Brooke's Bonding.

8. Jay Otey resides in this judicial district. At all times herein described, Mr. Otey worked as an agent and/or employee of On Time Bonding.

9. American Contractors Indemnity Company is a corporation incorporated under the laws of California with principal place of business in Los Angeles, California. American Contractors Indemnity Company partners with On Time Bonding to provide bail bonding services in Davidson County, Tennessee.

10. Continental Heritage Insurance Company is a corporation incorporated under the laws of Florida with principal place of business in Orange Village, Ohio. Continental Heritage Insurance Company partners with Brooke's Bonding to provide bail bonding services in Davidson County, Tennessee.

11. Plaintiff Robert Lance Johansen is the father of the decedent Lauren Johansen. He is a resident of Vancleave, Mississippi. By Order entered June 2, 2025, the Probate Court for Davidson County, Tennessee, appointed Plaintiff Robert Lance Johansen as the administrator of the estate of Lauren Johansen, who was a resident of Hattiesburg, Mississippi at the time of her death.

## JURISDICTION AND VENUE

12. The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

13. The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims that they form part of the same case and controversy.

14. The Court has also has subject-matter jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff, as administrator of Lauren Johansen's estate, and all Defendants, and the amount in controversy exceeds $75,000.

15. The Court has general personal jurisdiction over Defendants Brooke's Bonding, LLC, Wilhoite, McMillian, Freedom Monitoring Services, LLC, Harlan-Evitts, White d/b/a On Time Bonding, Otey, and Ridley because they are all residents of Tennessee.

16. The Court has specific personal jurisdiction over Defendant American Contractors Indemnity Corporation because it partnered with On Time Bonding to provide bail bonding services in Tennessee, and this action arises out of On Time Bonding's negligent, reckless, malicious, and/or deliberately indifferent conduct in providing such bail bonding services.

17. The Court has specific personal jurisdiction over Defendant Continental Heritage Insurance Company because it partnered with Brooke's Bonding to provide bail bonding services in Tennessee, and this action arises out of Brooke's Bonding's negligent, reckless, malicious, and/or deliberately indifferent conduct in providing such bail bonding services.

4

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

## FACTS

### Bail Bonding in Tennessee

19.     Article 1, §15 of the Tennessee Constitution guarantees the right to bail except where a criminal defendant has been charged with a capital offense.

20.     Tennessee allows private bail bonding services, operating individually or as a business association, to discharge this right for profit.

21.     Once a criminal court sets the amount of a criminal defendant's bail bond, bail bonding services accept a premium from a criminal defendant, or from some third-party on behalf of the criminal defendant, that is a fraction of the total value of the bond required by the criminal court.

22.     Authorized bail bonding services maintain "capacity" with the criminal court based on the amount of collateral they have posted with the Court clerk. This collateral is either in the form of cash or a letter of guaranty.

23.     Typically, bail bonding services may post individual bonds up to the amount of collateral they have posted with the Court clerk. The total amount of the bonds posted by any bail bonding service can equal up to 15 times the collateral the bail bonding service has posted with the Court clerk.

24.     The criminal defendant's bond will be charged against the bail bonding service's capacity until the bond is released.

5

25. Bail bonds are intended to secure the criminal defendant's appearance at any subsequent hearing. If the defendant does not appear, the bond should be forfeited.

26. Bail bonding services in Tennessee are regulated by statute and by the criminal courts of the county in which the bail bonding service operates.

27. Criminal courts in Davidson County license certain bail bonding services, which allows them to operate within the county.

28. In order to receive a license to operate within Davidson County, a bail bonding service must meet certain requirements. The Davidson County Criminal Courts are responsible for ensuring that any prospective bail bonding service meets these requirements and are empowered to oversee and ensure that the bail bonding service maintains these requirements if its licensing is approved.

29. According to Rule 9 of the Davidson County Criminal Court's Local Rules of Practice for Bail Bonds, "Every bonding company acts as an agent of the Court and the conduct of the bonding company constitutes an integral part of the operation of the Court."

30. The Davidson County Criminal Courts are also empowered to revoke the license of a bail bonding service.

31. Because nearly all criminal defendants, including those charged with violent felonies, are entitled to the opportunity to bail under the Tennessee Constitution, the Tennessee General Assembly passed statutes empowering criminal courts to impose conditions on the bail of criminal defendants who have been charged with certain violent offenses in order to maintain public safety and to maintain the safety of the victims of the crimes for which violent criminal defendants are being charged.

32. These conditions commonly include geographic restrictions that protect the victim of the criminal defendant's violent crimes from further harm. These geographic restrictions are typically maintained via a monitoring device, often attached at the ankle.

33. The Davidson County Criminal Courts maintain a list of approved GPS monitoring services.

34. While the federal court system, and many states, use government employees to monitor the conditions of a criminal defendants' bond, Tennessee authorizes bail bonding services to perform this function.

35. In Davidson County, Tennessee, the private bail bonding service who posts a criminal defendant's bond and a member of Davidson County Sheriff's Department and/or criminal court staff bonding service share the responsibilities of ensuring the public, including any victim of the defendant's crime, is protected from the violent criminal defendant who is released on bail.

36. Tennessee law authorizes private bail bonding services to arrest, without a warrant, the criminal defendants for whom they have posted bond in order to surrender the defendant back into state custody.

37. Defendants Brooke's Bonding and On Time Bonding are bail bonding services authorized by the Davidson County Criminal Courts to market their services in Davidson County. Defendants Harlan-Evitts, Wilhoite, Ridley, McMillian, Otey, and White are bail bondsmen who are licensed by the Davidson County Criminal Courts, pursuant to Tennessee statute, to post bonds on behalf of criminal defendants. Freedom Monitoring provides ankle monitors and GPS monitoring services to Brooke's Bonding as part of Brooke's Bonding's bail bonding activities.

7

Plaintiff will refer to these individuals and entities collectively as the "Bail Bonding Defendants" throughout the Complaint.

38. Bail bonding services in Tennessee are also required by statute to maintain sufficient liquidity to ensure funds are available when a bond is forfeited.

39. As an alternate means of satisfying the liquidity requirement, many bail bonding services maintain only minimal liquidity and instead partner with an insurance company.

40. The insurance company provides a letter of guaranty up to a certain amount, which is used in lieu of cash for determining capacity.

41. Defendants American Contractors Indemnity Company ("ACIC") and Continental Heritage Insurance Company ("CHIC") (jointly "insurance defendants") are insurance companies who have partnered with bail bonding services in order to share in the profits obtained by those bail bonding services.

**The Partnership Between Brooke's Bonding and
Continental Heritage Insurance Company**

42. At all times herein described, Brooke's Bonding and CHIC operated as a partnership, whether implied or express, in order to post bonds for criminal defendants, including Bricen Rivers.

43. In carrying out the business of their partnership, Brooke's Bonding and CHIC combined their property, labor, skills, experience, and/or money to make a profit. Brooke's Bonding performed many traditional aspects of its bail bonding services, including, *inter alia*, finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with conditions of bail, and ensuring the defendant appeared for his or her court hearings.

8

44.     CHIC provided financial backing that allowed the partnership to bond out criminal defendants beyond what Brooke's Bonding's individual liquidity would otherwise allow.

45.     CHIC executed powers of attorney for Brooke's Bonding's agents and/or employees, including Defendant Harlan-Evitts.  These powers of attorney authorized Brooke's Bonding's agents and/or employees to execute bonds on behalf of CHIC.

46.     Brooke's Bonding and CHIC shared profits.  Whenever a criminal defendant, or an individual on behalf of a criminal defendant, paid a premium for bail bonding services, Brooke's Bonding and CHIC would each receive a portion of that premium.

47.     Brooke's Bonding and CHIC also shared losses.  If a criminal court required forfeiture of a bond, Brooke's Bonding and CHIC shared the cost of paying the forfeited bond to the criminal Court.

### The Partnership Between On Time Bonding and American Contractors Indemnity Company

48.     At all times herein described, On Time Bonding and ACIC operated as a partnership, either implied or express, in order to post bonds for criminal defendants, including Bricen Rivers

49.     In carrying out the business of their partnership, On Time Bonding and ACIC combined their property, labor, skills, experience, and/or money to make a profit.  On Time Bonding performed many traditional aspects of its bail bonding services, including, *inter alia*, finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with conditions of bail, and ensuring the defendant appeared for his or her court hearings.

50.     ACIC provided financial backing that allowed the partnership to bond out criminal defendants beyond what On Time Bonding's individual liquidity would otherwise allow.

9

51. On Time Bonding and ACIC shared profits. Whenever a criminal defendant, or an individual on behalf of a criminal defendant, paid a premium for bail bonding services, On Time Bonding and ACIC would each receive a portion of that premium.

52. On Time Bonding and ACIC also shared losses. If a criminal court required forfeiture of a bond, On Time Bonding and ACIC shared the cost of paying that bond to the criminal Court.

**The Events Leading to Lauren Johansen's Death**

53. On or about December 11, 2023, nonparty Bricen Rivers, a resident of Mississippi, came to Nashville, Tennessee with Decedent Lauren Johansen.

54. At or around that time, Bricen Rivers repeatedly battered Ms. Johansen and, as a result of these actions, was arrested for felony especially aggravated kidnapping.

55. Bricen Rivers was charged with three felonies arising from his assault of Ms. Johansen: Especially aggravated kidnapping, aggravated stalking, and coercion of a witness.

56. Bricen Rivers's criminal case was assigned to Judge Blackburn in Division III of Davidson County's Criminal Court.

57. Mr. Rivers's bail was initially set at $250,000.

58. Based on the efforts of Mr. Rivers's mother, Chelsa Rivers, the criminal court lowered Bricen Rivers's bail to $150,000 by order entered April 3, 2024.

59. The April 3, 2024, order also stated that if Bricen Rivers posted bond, the following conditions would apply:

    a. "He is to live in Davidson County, Tennessee. He must supply the court with the address at which he will be living."
    b. "He is to be placed on electronic monitoring."
    c. "He is not to have any contact, either in person or through anyone else, with Ms. Johansen or any other potential witness in this case."
    d. "He is not to possess weapons of any kind."

10

e.   "He is to have no new arrests."

60.   Chelsa Rivers began communicating with bonding companies to find one willing to post a bond for Bricen Rivers's bail.

61.   Ms. Rivers contacted nonparty Elite Bonding, who initially agreed to post Mr. Rivers's bond.

62.   The Court convened a bond hearing on June 4, 2024.

63.   After the bond hearing, Elite Bonding informed Chelsa Rivers that it would not be able to post Bricen Rivers's bond.

64.   Elite Bonding referred Ms. Rivers to Defendant Brooke's Bonding.

65.   Brooke's Bonding agreed to cover $75,000 of the $150,000 bail for the price of $6,000.

66.   An agent of Brooke's Bonding then contacted Defendant On Time Bonding, who agreed to cover the other $75,000, for payment of a fee of $6,000.

67.   As a result of the change in bonding companies, the Court convened a second bond hearing on June 5, 2024.

68.   At the June 5, 2024, bond hearing, Judge Blackburn set bond conditions, consistent with the April 3, 2024, order, requiring that Bricen Rivers:

a.   Wear a GPS bracelet.
b.   Stay in Davidson County.
c.   Reside at 1256 Avondale Cir., Nashville, TN 37207
d.   Stay away from alleged victim Lauren Johansen or other witnesses.
e.   Refrain from alcohol and drug use.
f.   Possess no weapons.
g.   Not be arrested again.
h.   Report to Stephanie Krivcher.
i.   And have Absolutely no contact with the alleged victim.

69.   The court memorialized its ruling in an order reflecting these bond conditions.

11

70. The order required the bonding company who posted Bricen Rivers's bond to "transport the defendant to Tracking Solutions (the GPS monitoring company) . . . ."

71. That order also stated:

> The bonding company "is to surrender the defendant to the custody of the Davidson County Sheriff's Office **upon notification by the monitoring company of any violations of the Court order.** By signing this Order, the bonding company acknowledges the conditions of bond and its responsibility to surrender the defendant as soon as possible after notification by the monitoring company. Failure to respond to violations in a timely manner may result in suspensions of bond privileges and for other penalties as deemed appropriate by the Court. (Emphasis Supplied)

72. Defendant McMillian signed the court's June 5, 2024, order on behalf of Brooke's Bonding.

73. Defendant Otey signed the court's June 5, 2024, order on behalf of On Time Bonding.

74. By June 24, 2024, Brooke's Bonding had collected $4,500 from Ms. Rivers, and On Time Bonding had collected $3,000 from Ms. Rivers. Each bonding company then shared a portion of these funds with their respective insurance company partners.

75. On June 24, 2024, Brooke's Bonding and On Time Bonding each posted a $75,000 bond to the Davidson County Warrant and Bond Office, which is a division of the Davidson County Sheriff's Department.

76. Agents from Brooke's Bonding and On Time Bonding departed the Davidson County Warrant and Bond Office without custody of Bricen Rivers. Despite knowing that the court would typically impose conditions for release of a defendant facing felony charges, the agents from Brooke's Bonding and On Time Bonding failed to request copies of the court order or to otherwise obtain any information concerning the terms of Bricen Rivers's release.

77. Later in the afternoon of June 24, 2024, Defendant Ridley received a phone call from Bricen Rivers, who had been released from jail.

78. Ridley picked up Bricen Rivers and returned him to Brooke's Bonding's office.

79. Rather than transport Defendant to the GPS monitoring company identified in the Court's order, Ridley contacted Wilhoite, who is an agent of Brooke's Bonding and the owner of Defendant Freedom Monitoring, LLC, which is also a GPS monitoring company.

80. Wilhoite told Ridley to use one of Freedom Monitoring's GPS ankle monitors that was already in Brooke's Bonding's office.

81. Ridley affixed the ankle monitor but did not program the monitor so that an alert would go out if Rivers left Davidson County.

82. Chelsa Rivers sent Brooke's Bonding an additional $130 to pay for a bus ticket so that Bricen Rivers could travel to Mississippi.

83. The Bail Bonding Defendants then released Bricen Rivers from Brooke's Bonding's office and facilitated his travel to Mississippi using the money Chelsa Rivers had sent Brooke's Bonding for the bus ticket.

84. Upon his release, Bricen Rivers traveled to Mississippi by bus as arranged by Brooke's Bonding.

85. The Bail Bonding Defendants knew Bricen Rivers had left Davidson County and Tennessee and therefore was in violation of the conditions of his bond.

86. On June 27, 2024, the Bail Bonding Defendants began having issues with Bricen Rivers's ankle monitor. They asked him to return to Brooke's Bonding's office to make necessary adjustments.

13

87. On Friday June 28, 2024, at or around 12:37 p.m. Harlan-Evitts received an email from Deborah Cook the State Warrant and Bond Office informing the Bail Bonding Defendants of the conditions on Bricen Rivers's bond.

88. On the same day, after receiving the email, Harlan-Evitts and other agents/employees of Brooke's Bonding informed Freedom Monitoring and On Time Bonding about the conditions on Bricen Rivers's bond.

89. Despite full knowledge that Bricen Rivers had violated the conditions of his bond by leaving Davidson County and explicit instruction from the Court to surrender Bricen Rivers to the Davidson County Sheriff's Office if he violated the terms of his bond, Harlan-Evitts, exercising managerial authority as the owner of Brooke's Bonding, instructed the agents and/or employees of Brooke's Bonding to facilitate Bricen Rivers's return to Davidson County so that Wilhoite could affix a new GPS monitoring device to his ankle. Despite having full knowledge and awareness of the court order instructing Brooke's Bonding and On Time Bonding to surrender Bricen Rivers as soon as possible after notification of any violations of the June 5, 2024, order, Harlan-Evitts specifically did not instruct the agents and/or employees of Brooke's Bonding to immediately forfeit him to State custody or travel to Mississippi to arrest him.

90. On June 29, 2024, Bricen Rivers arrived at Brooke's Bonding's office to meet Wilhoite, who was acting on behalf of both Brooke's Bonding and Freedom Monitoring.

91. The Bail Bonding Defendants were aware that Bricen Rivers had returned to Brooke's Bonding's office.

92. Ms. Ridley had also planned to be at Brooke's Bonding's office on June 29, 2024, to meet Bricen Rivers, but claims to have been unable to do so due to a personal matter

14

93.     Brooke's Bonding failed to have any policy or procedure in place for coverage in the event of such an eventuality.

94.     Bricen Rivers informed Wilhoite that he had been and would continue to be unable to stay at the Nashville address listed in the conditions of his bail.

95.     Wilhoite placed a new ankle monitor on Bricen Rivers.

96.     Wilhoite did not program the ankle monitor to inform the Bail Bonding Defendants if Bricen Rivers left Davidson County, Tennessee or to otherwise monitor Bricen Rivers in accordance with the Court's directions.

97.     The Bail Bonding Defendants knew that between June 24 and June 29, 2024, Bricen Rivers had violated his bail conditions by leaving Davidson County.

98.     The Bail Bonding Defendants nonetheless released Bricen Rivers from Brooke's Bonding and allowed him to return to his vehicle on June 29, 2024.

99.     Harlan-Evitts, who at all relevant times had managerial and policy-making authority for Brooke's Bonding, authorized the release of Bricen Rivers.

100.    Harlan-Evitts, who at all relevant times had managerial and policy-making authority for Brooke's Bonding, did not instruct any agent and/or employee of Brooke's Bonding to arrest Bricen Rivers and surrender him to the Davidson County Sheriff's Office.

101.    Following his release, Bricen Rivers immediately began traveling to Southern Mississippi.

102.    Because Bricen Rivers was wearing a GPS ankle monitor, the Bail Bonding Defendants knew, and they certainly should have known, Bricen Rivers's location and that he was leaving Davidson County and Tennessee.

15

103. Upon realizing that Bricen Rivers had left Davidson County, none of the Bail Bonding Defendants contacted authorities in Tennessee to attempt to apprehend him.

104. Upon realizing that Bricen Rivers had left Tennessee, none of the Bail Bonding Defendants contacted authorities in Mississippi to warn them that a violent criminal had violated the conditions of his bond and fled Tennessee.

105. Upon realizing that Bricen Rivers had left Davidson County, none of the Bail Bonding Defendants contacted Lauren Johansen or any of her family to warn them that Bricen Rivers had returned to Southern Mississippi.

106. Despite knowledge of Bricen Rivers's bond conditions, knowledge that Bricen Rivers was in violation of those bond conditions, and knowledge that those bond conditions were put in place to protect Lauren Johansen, the Bail Bonding Defendants did not undertake any legitimate efforts to prevent or impede Bricen Rivers from violating the conditions of his bond.

107. On July 2, 2024, three days after the Bail Bonding Defendants decided to violate the Davidson County Court's order and conceal the fact that they had allowed Bricen Rivers to return to Mississippi, Bricen Rivers kidnapped, assaulted, and ultimately killed Lauren Johansen.

## COUNT I

### Wrongful Death (All Defendants)

108. Plaintiff incorporates Paragraphs 1 through 107 of the Complaint as though alleged herein.

109. Plaintiff is the administrator of Lauren Johansen's estate and brings this wrongful death action on behalf of Lauren Johansen's statutory wrongful death beneficiaries to recover damages for Ms. Johansen's lost wages and pain and suffering, as well as the economic benefit Ms. Johansen's beneficiaries would have expected to receive from Lauren Johansen in the form of

16

support, services, or contributions during Lauren Johansen's life had she not died as a result of the Bail Bonding Defendants' acts and/or omissions.

110. The Bail Bonding Defendants each had a duty to ensure that Bricen Rivers complied with the conditions of his bail, including remaining in Davidson County and staying away from Lauren Johansen.

111. The Bail Bonding Defendants each had a duty to surrender Bricen Rivers to the Davidson County Sheriff's Office if they learned that Bricen Rivers had violated the conditions of his bond.

112. The Bail Bonding Defendants had a duty to monitor Bricen Rivers's location.

113. The Bail Bonding Defendants knew that Bricen Rivers posed a significant risk of harm to Lauren Johansen.

114. The Bail Bonding Defendants knew that Bricen Rivers had violated the conditions of his bail.

115. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by not making a reasonable inquiry into the conditions of Bricen Rivers's bail at the time they agreed to put up a bond for his release.

116. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by releasing Bricen Rivers despite actual and/or constructive knowledge that he had violated the conditions of his bail by leaving Davidson County.

117. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by releasing Bricen Rivers with no safeguards in place to prevent him from traveling to Mississippi.

118. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to put in place any safeguards to inform them if Bricen Rivers traveled outside of Davidson County.

119. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to inform authorities in Mississippi that Bricen Rivers had traveled to Mississippi.

120. The Bail Bonding Defendants acted negligently, recklessly, and/or maliciously by failing to inform Lauren Johansen, the victim of Bricen Rivers's prior crime, or Plaintiff, a witness against Bricen Rivers, that Bricen Rivers had traveled to Mississippi.

121. As a result of the Bail Bonding Defendants' negligent, reckless, and/or malicious actions and/or omissions, Bricen Rivers was able to return to Mississippi, find Lauren Johansen, and kidnap, batter, and kill her.

122. The Bail Bonding Defendants are liable for all damages recoverable by law for Lauren Johansen's wrongful death.

123. Brooke's Bonding is vicariously liable for the wrongful conduct of Defendants Wilhoite, Ridley, McMillian, Harlan-Evitts under the doctrine of *respondeat superior*.

124. White d/b/a On Time Bonding is vicariously liable for the wrongful conduct of Defendant Otey under the doctrine of *respondeat superior*.

125. Freedom Monitoring is vicariously liable for the wrongful conduct of Defendant Wilhoite under the doctrine of *respondeat superior*.

126. CHIC is jointly and severally liable for the wrongful conduct of Brooke's Bonding because CHIC and Brooke's Bonding were partners in a bail bonding partnership for profit, and Brooke's Bonding's negligent, reckless, and/or malicious actions took place in the course of the partnership's business.

18

127. ACIC is jointly and severally liable for the wrongful conduct of On Time Bonding because ACIC and On Time Bonding were partners in a bail bonding partnership for profit, and On Time Bonding's negligent, reckless, and/or malicious actions took place in the course of the partnership's business.

<b><u>COUNT II</u></b>

<b>42 U.S.C. § 1983 (All Defendants)</b>

128. Plaintiff incorporates Paragraphs 1 through 127 of the Complaint as though alleged herein.

129. At all times described herein, Defendants were exercising authority granted to them by the State of Tennessee and the Davidson County Criminal Court to provide surety on behalf of criminal defendants.

130. At all times described herein, Defendants were acting as agents of the Davidson County Criminal Court.

131. At all times described herein, Defendants were exercising authority granted to them by the State of Tennessee and the Davidson County Criminal Court to supervise pretrial detainees charged with violent offenses.

132. At all times described herein, Defendants were exercising authority traditionally chargeable to the state to ensure that criminal defendants charged with violent offenses and released on bond follow state-imposed conditions of release.

133. At all times described herein, Defendants were facilitating the exercise of Bricen Rivers constitutional right to bail and compliance with Tennessee's statutes authorizing a criminal court impose conditions on the pretrial release of criminal defendants charged with, *inter alia*, aggravated stalking. These duties would have otherwise been chargeable to the state.

19

134.   At all times described herein, Defendants were carrying out the duty of ensuring Bricen Rivers remained in Davidson County, away from Lauren Johansen, and available for his next Court hearing.  These duties would have otherwise been chargeable to the State.

135.   At all times described herein, Defendants were acting together with the Davidson County Criminal Court, State Trial Court Employee Stephanie Krivcher, and the Davidson County Sheriff's Office to supervise and ensure Bricen Rivers's compliance with the conditions of his bail.

136.   No later than June 28, 2024, at or around 12:37 p.m., four days before Bricen Rivers killed Lauren Johansen, Defendants became aware of all of the conditions of Bricen Rivers's bail, including the condition that he remain in Davidson County.

137.   Defendants were also aware that Bricen Rivers had violated the conditions of his bail by traveling to Mississippi.

138.   Notwithstanding actual knowledge of the significant danger Bricen Rivers posed to Ms. Johansen, the conditions the criminal court placed on Bricen Rivers's bail, and the fact that Bricen Rivers had already violated the conditions of his bail, the Bail Bonding Defendants released Bricen Rivers to return to Mississippi on June 29, 2024.

139.   After his release, and in deliberate or reckless violation of the court's June 5, 2024, order, no attempt was made to arrest or detain him and no effort was made to contact authorities in Tennessee, authorities in Mississippi, Lauren Johansen, or Plaintiff to warn them about the dangerous criminal defendant who had violated the conditions of his bail.

140.   The Bail Bonding Defendants' action of releasing Bricen Rivers created a substantial risk that Ms. Johansen would be subjected to violence at Bricen Rivers's hands.

141.   The Bail Bonding Defendants acted with deliberate indifference to the extreme threat that Bricen Rivers posed to Lauren Johansen by releasing him.

142. As a result of the Bail Bonding Defendants' actions, Ms. Johansen was kidnapped, beaten, and killed in violation of her constitutional rights, including her Fourteenth Amendment right to not be deprived of her life, liberty, or property without due process of law.

143. Additionally, at all times herein described, Brooke's Bonding, On Time Bonding, and Freedom Monitoring, as business entities, had a policy, custom, and/or practice of releasing pretrial detainees charged with violent criminal offenses with no safeguards in place to ensure the pretrial detainee would comply with the conditions of his or her bail.

144. At all times herein described, Brooke's Bonding, On Time Bonding, the bail bonding partnership between Brooke's Bonding and CHIC, the bail bonding partnership between On Time Bonding and ACIC, and Freedom Monitoring had a policy, custom, and/or practice of failing to adequately train its employees, agents, and/or contractors about when it is appropriate to release a criminal defendant charged with violent felonies.

145. At all times herein described, Brooke's Bonding, On Time Bonding, the bail bonding partnership between Brooke's Bonding and CHIC, the bail bonding partnership between On Time Bonding and ACIC, and Freedom Monitoring had a policy, custom, and/or practice of refusing to surrender to the state violent criminal defendants who had been in violation of the court-ordered bond conditions.

146. At all times herein described, Brooke's Bonding, On Time Bonding, the bail bonding partnership between Brooke's Bonding and CHIC, the bail bonding partnership between On Time Bonding and ACIC, and Freedom Monitoring had a policy, custom, and/or practice of using unapproved GPS Monitoring services in an attempt to satisfy the GPS Monitoring conditions on a criminal defendants' bail.

21

147. The policies, customs, and/or practices of Brooke's Bonding, On Time Bonding, the bail bonding partnership between Brooke's Bonding and CHIC, the bail bonding partnership between On Time Bonding and ACIC, and Freedom Monitoring demonstrated a deliberate indifference towards the lives of victims of violent crime.

148. That the victim of a violent crime would be kidnapped, injured, and/or killed by a pretrial detainee charged with a violent crime against the victim and released without supervision was an obvious and foreseeable consequence of the policies, customs, and/or practices of Brooke's Bonding, On Time Bonding, the bail bonding partnership between Brooke's Bonding and CHIC, the bail bonding partnership between On Time Bonding and ACIC, and Freedom Monitoring.

149. At all times herein described, Defendant Harlan-Evitts had policymaking and managerial authority for Brooke's Bonding and the bail bonding partnership between Brooke's Bonding and CHIC by title, custom, and practice.

150. At all times herein described, Defendant White had policymaking and managerial authority for On Time Bonding and the bail bonding partnership between On Time Bonding and ACIC by title, custom, and practice.

151. At all times herein described, Defendant Wilhoite had policymaking and managerial authority for Freedom Monitoring by title, custom, and practice.

152. At all times herein described, Defendants Harlan-Evitts and White were exercising their policymaking and/or managerial authority.

153. Defendants' private conduct is fairly attributable to the State of Tennessee because they received state authority to post bail bonds, worked in conjunction with state employees, and were performing a duty that Tennessee and Davidson County would otherwise be required to perform pursuant to the Constitution of Tennessee.

154.    As a result of the Bail Bonding Defendants' deliberate indifference towards the risk Bricen Rivers posed to Lauren Johansen, Ms. Johansen lost her life in violation of her Constitutional rights, including her Fourteenth Amendment right to not be deprived of life, liberty, or property without due process of law.

155.    Accordingly, the Bail Bonding Defendants are liable under 42 U.S.C. § 1983 for all damages and remedies recoverable under 42 U.S.C. § 1988, including but not limited to compensatory damages, punitive damages, attorneys' fees, and expert fees.

### COUNT III

### Joint Venture (Brooke's Bonding and On Time Bonding)

156.    Plaintiff incorporates Paragraphs 1 through 155 of the Complaint as though alleged herein.

157.    Brooke's Bonding and On Time Bonding expressly agreed to each post $75,000 of Bricen Rivers's $150,000 bail.

158.    Brooke's Bonding and On Time Bonding expressly agreed to the joint purpose of each posting $75,000 towards Bricen Rivers's $150,000 bond, for the purpose of securing Bricen Rivers's release from custody.

159.    Brooke's Bonding and On Time Bonding had the common purpose of profiting off of the fee associated with Bricen Rivers's bail bond and ensuring Bricen Rivers complied with his bond conditions and appeared at his next criminal court hearing.

160.    Brooke's Bonding and On Time Bonding had an equal right to control Bricen Rivers.

161.    Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's and On Time Bonding's negligent, reckless, and/or intentional acts pursuant to their joint venture,

23

they should be held jointly and severally liable for any judgment awarded to Plaintiff against either of them.

## COUNT IV

### Joint Venture (Brooke's Bonding and Freedom Monitoring)

162. Plaintiff incorporates Paragraphs 1 through 161 of the Complaint as though alleged herein.

163. Brooke's Bonding entered into an agreement with Freedom Monitoring for the common purpose of ensuring that Bricen Rivers would be under GPS monitoring through the use of an ankle monitor, and thereby ensure that Bricen Rivers remained in compliance with the conditions of his release.

164. Wilhoite, who authorized Ridley to affix the ankle monitor to Bricen Rivers, was an agent and/or employee of both Brooke's Bonding and Freedom Monitoring.

165. At all times described herein, Wilhoite acted in her capacity as agent and/or employee of both Brooke's Bonding and Freedom Monitoring.

166. Brooke's Bonding and Freedom Monitoring had an equal right to control the electronic monitoring of Bricen Rivers.

167. Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's and Freedom Monitoring's negligent, reckless, and/or intentional acts pursuant to their joint venture, they should be held jointly and severally liable for any judgment awarded to Plaintiff against either of them.

24

**COUNT V**

**Partnership Liability**
**(Brooke's Bonding and CHIC)**

168. Plaintiff incorporates Paragraphs 1 through 167 of the Complaint as though alleged herein.

169. Brooke's Bonding and Continental Heritage Insurance Company combined their property, labor, experience, and/or money in order to carry out a bail bonding service for profit.

170. Brooke's Bonding and Continental Heritage Insurance Company shared the profits gained in the course of their partnership by splitting the fees paid by or on behalf of criminal defendants for bail bonding services.

171. Brooke's Bonding and CHIC shared the losses incurred when a bond was forfeited to the criminal court.

172. Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's negligent, reckless, and/or intentional acts in the course of partnership business, Continental Heritage Insurance Company is vicariously and jointly and severally liable for any judgment awarded against Brooke's Bonding.

**COUNT VI**

**Partnership Liability**
**(On Time Bonding and ACIC)**

173. Plaintiff incorporates Paragraphs 1 through 172 of the Complaint as though alleged herein.

174. On Time Bonding and ACIC combined their property, labor, experience, and/or money in order to carry out a bail bonding service for profit.

25

175. On Time Bonding and ACIC shared the profits gained in the course of their partnership by splitting the fees paid by or on behalf of criminal defendants for bail bonding services.

176. On Time Bonding and ACIC shared the losses incurred when a bond was forfeited to the criminal court.

177. Because Lauren Johansen was injured and killed as a result of On Time Bonding's negligent, reckless, and/or intentional acts in the course of partnership business, ACIC is vicariously and jointly and severally liable for any judgment awarded against On Time Bonding.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That proper process issue and be served upon Defendants, requiring them to appear and answer this Complaint;

2. That Plaintiff be awarded damages in the amount of $50,000,000.00 in compensatory damages for Defendants' violations of Lauren Johansen's constitutional rights and for her wrongful death as a result of Defendants' negligence, recklessness, intentional, and/or malicious acts and/or omissions;

3. That Plaintiff be awarded punitive damages for Defendants' intentional, fraudulent, malicious, and/or reckless conduct in the amount of $100,000,000.00;

4. That the Court hold Defendants jointly and severally liable for all damages attributable to any individual defendant;

5. That Plaintiff be awarded his reasonable attorneys' and experts' fees to the extent allowed by law;

26

6.        That the Court empanel a jury of six to hear this cause;

7.        That the Court tax the costs of this action to Defendants; and

8.        That the Court award such other and further relief as it deems appropriate.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Philip N. Elbert*
Philip Elbert, # 009430
Elizabeth Tipping, # 023066
Satchel Fowler, # 039624
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Telephone: (629)-312-1823
phil.elbert@wbd-us.com
liz.tipping@wbd-us.com
satchel.fowler@wbd-us.com

27

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing has been sent via the method indicated below on the following this the 30th day of September 2025.

Bryan Lewis                        Via Email
**Bryan Lewis Law**
1300 Division St. Suite 307
Nashville, TN 37203
bryan@bryanlewislaw.com

Will Helou                        Via the Court's e-filing system
**WSMLegal PLLC**
2817 West End Avenue, Suite 126-107
Nashville, TN 37203
whelou@wsmlegal.com

*Counsel for Brooke's Bail Bonding, LLC, Brooke Harlan-Evitts, and Continental Heritage Insurance Company*

Matt Pietsch                     Via Email
**Gordon Rees Scully Mansukhani**
4031 Aspen Grove Drive, Suite 290
Franklin, TN  37067
mpietsch@grsm.com
*Counsel for Unserved Party American Contractors Indemnity Company*

Joseph Zanger                  Via the Court's e-filing system
**Zanger Law Firm**
135 Clif Garret Drive
White House, TN 37188
joe@zangerlaw.com
*Counsel for Nakeda Wilhoite and Freedom Monitoring, LLC*

Tyrell White d/b/a On Time Bonding       Via U.S. First Class Mail
704 Pin Oak Dr.
Antioch, TN 37013

Neicola McMillian               Via U.S. First Class Mail
1018 32nd Ave N.
Nashville, TN 37209

Alisha Ridley                   Via U.S. First Class Mail
101 Davis Park Drive Unit 119
Smyrna, TN 37167
*Defendants*                    */s/ Philip N. Elbert*

28