# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

ROBERT LANCE JOHANSEN as )
administrator of the estate of )
LAUREN JOHANSEN, )
)
    Plaintiff )
)
v. ) **Case No. 3:25-cv-00690**
) **Judge Aleta Trauger**
BROOKE'S BAIL BONDING, LLC, ) **JURY TRIAL DEMANDED**
FREEDOM MONITORING )
SERVICES, LLC, TYRELL WHITE )
d/b/a ON TIME BAIL BONDING, )
BROOKE HARLAN-EVITTS, JAY )
OTEY, NEICOLA MCMILLIAN, )
NAKEDA WILHOITE, ALISHA )
RIDLEY, AMERICAN )
CONTRACTORS INDEMNITY CO., )
and CONTINENTAL HERITAGE )
INSURANCE COMPANY, )
    Defendants. )

---

## DEFENDANTS BROOKE'S BAIL BONDING, LLC'S AND BROOKE HARLAN-EVITTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Brooke's Bail Bonding, LLC ("BB Bonding"), and Brooke Harlan-Evitts ("Ms. Harlan-Evitts") (collectively "BB Bonding Defendants") by and through their undersigned attorney respectfully request that the Court dismiss with prejudice the following: (1) Counts I (Wrongful Death) and Count II (42 U.S.C. § 1983) against Ms. Harlan-Evitts; and (2) Counts II (42 U.S.C. § 1983), III (Joint Venture), IV (Joint Venture), and V (Partnership Liability) against BB Bonding.

The BB Bonding Defendants provide the following Memorandum of Law in Support of their Motion:

## INTRODUCTION

Perhaps the most notable feature of Plaintiff's First Amended Complaint ("FAC" or "Complaint") is what it does not contain, despite Plaintiff's the opportunity to amend. The Complaint stems from the horrific kidnapping, assault, and murder of Ms. Lauren Johansen at the hands of her partner, Mr. Bricen Rivers. But the Complaint fails to include factual allegations tying the Plaintiff's claims for wrongful death, violations of Section 1983, and "joint venture"/"partnership" to Ms. Harlan-Evitts and BB Bonding beyond their respective statuses as licensed bondsperson and bond company that posted and secured bail for Mr. Rivers. Instead, Plaintiff relies exclusively on conclusory assertions and generalized statements that fall short of the Federal pleading standard. Without specific, well-pleaded facts connecting Ms. Harlan-Evitts and BB Bonding to the requisite

actionable conduct or legally viable theories, the Complaint does not and cannot meet the threshold requirement to survive.

For the foregoing reasons and as described in more detail below, the BB Bonding Defendants respectfully request that the Court dismiss with prejudice the following claims for relief:

*First*, the Court should dismiss Count I (Wrongful Death) against Ms. Harlan-Evitts because Plaintiff fails to plead any facts relating to Ms. Harlan-Evitts' conduct, much less the elements required to establish a wrongful death claim.

*Second*, the Court should dismiss Count II (42 U.S.C. § 1983) against Ms. Harlan-Evitts and BB Bonding because Plaintiff has not and cannot establish the two required elements of a § 1983 claim, namely (1) that Ms. Johansen had a federal constitutional right that was violated; and (2) that the BB Defendants were persons acting under color of law.

*Third*, the Court should dismiss Counts III (Joint Venture), IV (Joint Venture), and V (Partnership Liability) against BB Bonding because Plaintiff has not and cannot provide factual support for relationships that are consistent with a "common purpose" or "joint business undertaking."  In fact, it appears that Plaintiff's joint venture claims are nothing more than an attempt around Tennessee's adoption of modified comparative liability, barring joint and several liability in all but a few instances, one of which being civil conspiracy, a claim that would be completely unsupported here. *See* Tenn. Code. Ann. § 29-11-107.

3

The following provides a brief summary of the barebone factual allegations contained in the Complaint.

Plaintiff's claims arise as a result of Ms. Lauren Johansen's murder at the hands of her partner, Mr. Bricen Rivers, in Mississippi after the Davidson County Criminal Courts released him following his arrest in December 2023. (*FAC* ¶ 107.) In December 2023, Mr. Rivers assaulted Ms. Johansen while they were visiting Nashville from Mississippi. (*Id.* ¶¶ 53-55.) Mr. Rivers was arrested and ultimately released on bail, half of which was posted by BB Bonding and the other by On Time Bail Bonding ("OTBB"). (*Id.* ¶¶ 55-58, 65-66, 75.)

Mr. Rivers travelled back to Mississippi. (*Id.* ¶ 84.) BB Bonding and On Time Bonding knew that Mr. Rivers traveled to Mississippi and that doing so violated the bond conditions that required him to stay in Davidson County, conditions that were not initially relayed to either company or their agents prior to his initial release. (*Id.* ¶ 76.)

Mr. Rivers returned to Nashville to receive a new ankle monitor at BB Bonding, once the Bail Bonding Defendants began having issues with the ankle monitor. (*Id.* ¶¶ 86.) Mr. Rivers' ankle monitor was not programmed to inform the Bail Bonding

---

[1] The BB Bonding Defendants present the allegations contained in the Complaint exclusively for purposes of the Court's consideration of their Motion to Dismiss and otherwise deny the truth of the allegations contained therein.

Defendants if he left Davidson County, Tennessee, or to otherwise monitor Mr. Rivers in accordance with his bail conditions. (*Id.* ¶ 81.)

Rivers left Davidson County again and returned to Mississippi on June 29, 2024. (*Id.* ¶ 101.) The Bail Bonding Defendants knew or should have known Mr. Rivers left Nashville again. (*Id.* ¶ 102.) Mr. Rivers tragically kidnapped, assaulted, and killed Ms. Johansen three days later in Mississippi. (*Id.* ¶ 107.)

## LEGAL STANDARD

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss a case for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the Complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the Complaint meets this standard, the Court must accept the Complaint's factual allegations as true, draw all reasonable inferences in the Plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'" *Blackwell*,

979 F.3d at 524 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Recitations of the elements of a cause of action are insufficient. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting Twombly, 550 U.S. at 555)); *see also Delay v. Rosenthal Collins Group, LLC.*, 585 F.3d 1003, 1005–06 (6th Cir. 2009). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

ARGUMENT

**I.      Plaintiff fails to state a claim for wrongful death against Ms. Harlan-Evitts.**

Although the Federal courts employ a liberal pleading standard, Plaintiff's wrongful death claim against Ms. Harlan-Evitts must still fall. Plaintiff, without more, cannot sustain a wrongful death claim against Ms. Harlan-Evitts.

To establish a *prima facie* claim of negligence, Plaintiff must plead the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss;

6

(4) cause in fact; and (5) proximate, or legal, cause." *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (citations and quotations omitted).[2]

Plaintiff fails to include any factual allegations to satisfy the elements of a wrongful death claim against Ms. Harlan-Evitts. In fact, Plaintiff has included only nine factual allegations naming Ms. Harlan-Evitts in the entirety of his one hundred seventy-seven (177) paragraph Complaint:

- "Brooke Harlan-Evitts resides in this judicial district. Ms. Harlan-Evitts is the owner of Brooke's Bonding[.]" (*FAC*, ¶ 4.);

- "Harlan-Evitts . . . [is a] bail bondsm[a]n who [is] licensed by Davidson County Criminal Courts, pursuant to Tennessee statute, to post bonds on behalf of criminal defendants." (*Id*. ¶ 37.);

- "On Friday June 28, 2024 at or around 12:37 p.m. Harlan-Evitts received an email from Deborah Cook the State Warrant and Bond Office informing the Bail Bonding Defendants of the conditions on Bricen Rivers's bond." (*Id.* ¶ 87.);

---

[2] Plaintiff's claim for wrongful death appears to be a claim for negligence based on the conclusory allegations Plaintiff has included. To the extent Plaintiff's wrongful death claim arises from another legal theory, these arguments still apply because Plaintiff has not – and cannot – allege any actionable misconduct by Ms. Harlan-Evitts.

- "On the same day, after receiving the email, Harlan-Evitts and other agents/employees of Brooke's Bonding informed Freedom Monitoring and On Time Bonding about the conditions on Bricen Rivers's bond." (*Id.* ¶ 88.)

- "Despite full knowledge that Bricen Rivers had violated the conditions of his bond by leaving Davidson County and explicit instruction from the Court to surrender Bricen Rivers to the Davidson County Sheriff's Office if he violated the terms of his bond, Harlan-Evitts, exercising managerial authority as the owner of Brooke's Bonding, instructed the agents and/or employees of Brooke's Bonding to facilitate Bricen Rivers' return to Davidson County so that Wilhoite could affix a new GPS monitoring device to his ankle. Despite having full knowledge and awareness of the court order instructing Brooke's Bonding and On Time Bonding to surrender Bricen Rivers as soon as possible after notification of any violations of the June 5, 2024, order, Harlan-Evitts specifically did not instruct the agents and/or employees of Brooke's Bonding to immediately forfeit him to State custody or travel to Mississippi to arrest him." (*Id.* ¶ 89.);

- "Harlan-Evitts, who at all relevant times had managerial and policy-making authority for Brooke's Bonding, authorized the release of Bricen Rivers." (*Id.* ¶ 99.);

8

- "Harlan-Evitts, who at all relevant times had managerial and policy-making authority for Brooke's Bonding, did not instruct any agent and/or employee of Brooke's Bonding to arrest Bricen Rivers and surrender him to the Davidson County Sheriff's Office." (*Id.* ¶ 100.)

- "At all times herein described, . . . Harlan-Evitts . . . had policymaking and managerial authority for Brooke's Bonding and the bail bonding partnership between Brooke's Bonding and CHIC by title, custom, and practice." (*Id.* ¶ 149); and

- "At all times herein described Defendants Harlan-Evitts . . . w[as] exercising [her] policymaking and/or managerial authority." (*Id.* ¶ 127.)[3]

Ms. Harlan-Evitts' status as owner of BB Bonding is insufficient on its own to establish personal liability on behalf of BB Bonding, as a basic tenet of Tennessee law. Tenn. Code Ann. § 48-217-101(a)(1); Tenn. Code Ann. § 48-249-114(a)(1)(B). And none of the barebones allegations satisfies the elements required to establish a claim of negligence against Ms. Harlan-Evitts individually. Plaintiff has not identified a duty of care that Ms. Harlan-Evitts owed to Ms. Lauren Johansen. (*See FAC*, ¶¶ 108-127.) Plaintiff has not even

---

[3] Plaintiff has included a single conclusory allegation, that "Brooke's Bonding, On Time Bonding, and Freedom Monitoring, as business entities, had a policy, custom, and/or practice of releasing pretrial detainees charged with violent criminal offenses with no safeguards in place to ensure the pretrial detainee would comply with the conditions of his or her bail." (*FAC* ¶ 119.) Setting aside the blatantly false nature of this statement, such allegation, if proven, would only go to showing liability against the business entities.

9

identified a standard of care against which Ms. Harlan-Evitts' conduct would be measured. (*Id.*) And, Plaintiff has not causally connected Ms. Harlan-Evitts' conduct to Ms. Lauren Johansen's death. (*Id.*) At best, Plaintiff appears to claim that Ms. Harlan-Evitts should have (1) not authorized the release of Bricen Rivers (*id.* ¶ 99); and (2) instructed an agent or employee of Brooke's Bonding to arrest Bricen Rivers and surrender him to the Davidson County Sheriff's Office (*id.* ¶ 100) after she received an email from the State Warrant and Bond Office on June 28, 2024. (*Id.* ¶ 89.) But those two actions (or inaction) alone are not sufficient to satisfy the five requisite elements of a wrongful death claim based on negligence.

Instead, Plaintiff relies almost exclusively on improper group pleading that does not distinguish among and between the various bondspersons – one of whom is Ms. Harlan-Evitts – and other bonding company defendants. (*See, e.g.*, *FAC*, ¶¶ 112 ("The Bail Bonding Defendants had a duty to monitor Bricen Rivers' location."); 113 ("The Bail Bonding Defendants knew that Bricen Rivers posed a significant risk of harm to Lauren Johansen").)[4] Failure to separate out the defendants' liability or responsibility for each specific duty in the complaint does not meet the Federal pleading standard. *See Sheeran*

---

[4] Plaintiff's improper group pleading approach also directly contradicts the Davidson County Criminal Courts' *en banc* order (*see* **Exhibit A**, October 7, 2024, Order ("Order")) which specifically delineated the findings regarding the "calamity of human and institutional errors" that lead to Mr. Rivers's release. This Court may take judicial notice of the Order on this Motion to Dismiss. *See J.P. Silverton Indus. L.P. v. Sohm*, 243 Fed. App'x. 82, 87 (6th Cir. 2007).

*v. Blyth Shipholding, S.A.*, 2015 WL 9048979, at *3 (D. N.J. Dec. 16, 2015) (dismissing claims when the plaintiff alleged causes of action against all eight defendants without separating out each defendant's liability or responsibility for each specific duty in the complaint); *Rysewyk v. Sears Holding Corp.*, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015) (dismissing claims when the plaintiff alleged causes of action a collectively defined group of three defendants, even though one of the defendants was not alleged to have any involvement in the plaintiff's alleged injuries other than owning the intellectual property of a co-defendant for securitization purposes); *In re Zinc Antitrust Litig.*, 2016 WL 93864, at *32 (S.D.N.Y. Jan. 7, 2016) (dismissing claims when the plaintiff alleged causes of action against a group of affiliated corporate entities, even though some of the entities were named as defendants solely because they were in the chain of custody of one of the warehouses underlying the defendants' alleged antitrust violations).

Because Plaintiff has not alleged any factual allegations tying Ms. Harlan-Evitts' actions or inactions to Ms. Johansen's death, the Court should dismiss Count I against Ms. Harlan-Evitts with prejudice.

**II.     Plaintiff fails to state a 42 USC § 1983 claim against the BB Bonding Defendants.**

Plaintiff has attempted to shoehorn his wrongful death claim into a Section 1983 claim against the BB Bonding Defendants. But Plaintiff has ignored both of the elements of a Section 1983 claim. Plaintiff has not – and cannot – demonstrate that (1) Ms. Lauren Johansen had a federally protected right that was injured; or (2) the BB Bonding

Defendants were persons acting under color of law. In light of these fatal flaws, the Court should dismiss Count II against the BB Bonding Defendants with prejudice.

A claim under Section 1983 has two essential elements. The first element is that the challenged conduct must have been committed by a "person [acting] under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The second element is that this conduct must deprive the Plaintiff of "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." *Id.* "While Section 1983 complaints need not comply with heightened pleading standards, persons seeking to recover damages under Section 1983 must allege and prove more than a violation of federal law. They must allege and prove that they personally suffered an actual injury to a federally protected right." *King v. Betts*, 354 S.W.3d 691, 703 (Tenn. 2011) (citing *Blessing v. Freestone*, 520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)). Here, Plaintiff has not plead sufficient allegations in support of either element that composes a Section 1983 claim.

*First*, Plaintiff has not plead facts sufficient to demonstrate that either Ms. Harlan-Evitts or BB Bonding were persons acting under color of state law, or as explained above, that Ms. Harlan-Evitts acted at all. Because Section 1983, "applies only to [persons] who act 'under color' of state law[,] . . . as a general rule, § 1983 does not reach the conduct of private parties acting in their individual capacities." *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2020) (citing *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)). "A

private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party 'acted together with or . . . obtained significant aid from state officials' and did so to such a degree that its actions may properly be characterized as 'state action.'" *Davis v. Brudzinski*, No. 3:24 CV 1421, 2025 WL 268375, at *3 (N.D. Ohio Jan. 22, 2025) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).[5]

> In order to meet the second requirement regarding a non-governmental defendant, the plaintiff must show the defendant's conduct is "fairly attributable to the state." . . . "[F]air attribution" requires the plaintiff to show: (1) the deprivation was caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible; and (2) the party charged with the deprivation may be fairly described as a state actor.

*White v. Wilson*, No. 1:18-CV-00093, 2021 WL 809674, at *2 (M.D. Tenn. Mar. 3, 2021) (internal citations and quotations omitted).

Mere licensure as a bondsperson or bond company with the state of Tennessee - without more - is legally insufficient to establish that private bond persons or bond companies were acting under the color of the law for purposes of a Section 1983 claim. Courts have generally found bondspersons to be private actors when they act

---

[5] The Sixth Circuit uses three primary tests to determine whether a private actor defendants' conduct amounts to state action for purposes of Section 1983 claims. These tests are (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Weser*, 965 F.3d at 516. The Sixth Circuit has also referenced a fourth "entwinement test." *See Vinstein v. Am. Registry of Radiologic Technologists*, 342 Fed. Appx. 113, 128 (6th Cir. 2009). Plaintiff has not plead any facts to suggest a theory of state action by private actors under any of these tests.

unilaterally, without assistance from law enforcement officials. *See White*, 2021 WL 809674, at *3–4; *see also Morant v. Moyer*, No. 2:21-CV-05211, 2021 WL 5937757, at *4 (S.D. Ohio Dec. 16, 2021), *report and recommendation adopted*, No. 2:21-CV-5211, 2022 WL 93340 (S.D. Ohio Jan. 10, 2022). In other words, "bondspersons are not state actors solely by virtue of their status as bondspersons." *Morant*, 2021 WL 5937757, at *5 (citing *Corethers v. Atlas Bonding Co.*, 7 F.3d 232 (6th Cir. 1993) (unpublished table decision)).

Here, Plaintiff has not alleged any facts that suggest either Ms. Harlan-Evitts or BB Bonding were persons acting under color of state law beyond Ms. Harlan-Evitts' and BB Bonding's status as a bondsperson or bonding company. (*FAC*, ¶¶ 19-37.) In fact, Plaintiff's allegations highlight the separation between the state and the BB Bonding Defendants. None of the conduct Plaintiff alleges led to Ms. Johansen's death involved any state actors. (*Id.* ¶¶ 53-107 (section titled, "The Events Leading to Lauren Johansen's Death").) And, as Plaintiff's amendments to the Complaint emphasize, it was the Bonding Defendants' alleged misalignment with the state actors that lead to Ms. Johansen's death. (*See id.* ¶ 107 ("On July 2, 2024, three days after the Bail Bonding Defendants decided to violate the Davidson County Court's order and conceal the fact that they had allowed Bricen Rivers to return to Mississippi, Bricen Rivers kidnapped, assaulted, and ultimately killed Lauren Johansen.").)

Without a greater connection between the alleged violative acts and acting in concert with the state actors, Plaintiff has not and cannot satisfy the second element of

the 42 U.S.C. § 1983 claim. *See Marcum v. Ohio*, No. 2:24-CV-4048, 2025 WL 1347266, at *7 (S.D. Ohio May 8, 2025) (dismissing Section 1983 claims against bondsman defendants) (citing *Hubbard v. Abbott Bailbonds Agency LLC*, No. 1:20-CV-294, 2021 WL 1589109, at *3 (W.D. Mich. Apr. 23, 2021) (finding "no basis for inferring that Defendants acted under color of state law" where the plaintiff did not allege any "involvement by the state at all in the events giving rise to his injuries")).

*Second*, even if Plaintiff plead sufficient facts to show that the BB Bonding Defendants were acting under the color of law, Plaintiff has not identified a federally protected right. Plaintiff has only listed generally listed Ms. Johansen's "constitutional rights, including her Fourteenth Amendment right to not be deprived of her life, liberty, or property without due process of law." (*FAC* ¶ 142.) Such conclusory statement is insufficient to meet the second of the prongs required to establish a § 1983 claim. Even though Plaintiff has used buzz words unique to Section 1983 claims such as "deliberate indifference" (*Id.* ¶ 117), Plaintiff has not identified any "actual injury to a federally protected right." In doing so, Plaintiff cannot meet the requirements of Fed. R. Civ. P. 8. If Plaintiff cannot identify the right which he claims has been violated, he cannot establish the grounds for his entitlement to relief.

## III.  Plaintiff cannot remake the legal theories of "joint venture" and "partnership" as standalone claims for relief against BB Bonding.

Plaintiff attempts to recast the alleged relationships of "joint venture" and "partnership" (*see FAC*, Counts III (Joint Venture), IV (Joint Venture), and V (Partnership

Liability)) as standalone claims for relief. Even if "Joint Venture" or "Partnership Liability" were claims for relief (they are not), Plaintiff has failed to plead the bare minimum factual support required to establish the elements of those relationships. As a result, Counts III, IV, and V should be dismissed against BB Bonding.

In Tennessee:

> A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term, or a corporation, and they agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the adventure."

*Fain v. O'Connell*, 909 S.W.2d 790, 793 (Tenn. 1995) (quoting 30 *Am. Jur.*, p. 939, § 2). The Tennessee Supreme Court continued, "[b]ased on these definitions of a joint venture, common interest and purpose and equal right of control are essential components of a joint venture in which the negligence of one member is imputed to all of the other members." (*Id*.)

As to partnerships, a general partnership is formed by the "association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit." Tenn. Code Ann. §§ 61-1-101(9); 61-1-202(a). "A partnership is an entity *distinct from its partners*." *Id*. § 61-1-201(a) (emphasis added). A partnership may be formed explicitly or

may be formed implicitly based on the parties' actions. *Bass v. Bass*, 814 S.W.2d 38, 41

(Tenn. 1991). The Tennessee Supreme Court has explained:

> If the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so.

*Id*. (citation omitted).

Here, Counts III, IV, and V against BB Bonding fail for three reasons:

*First*, joint venture (Counts III, IV) or partnership (Count V) are not standalone causes of action. Joint venture and partnership are legal theories that describe a relationship between parties. *See Wyatt v. Byrd*, No. W200902635COAR3CV, 2010 WL 3063153, at *4 (Tenn. Ct. App. Aug. 3, 2010) ("[a] joint venture is a *<u>relationship</u>*…" (emphasis added)); Tenn. Code Ann. §§ 61-1-201(a) ("A partnership is an *<u>entity distinct from its partners</u>*.") (emphasis added). Those relationships may lead to an apportionment of damages but still require a separate theory of liability. And perhaps most importantly here, none of the "joint venture" or "partnership" claims state any theory of liability against BB Bonding or the entities with which BB Bonding allegedly had relationships. (*See FAC*, Counts III, IV, and V.)

*Second*, even if joint venture or partnership were standalone causes of action, Plaintiff's bare recitation of the elements and contradictory allegations do not meet the pleading standard. In the First Amended Complaint, Plaintiff recites a combination of the

17

legal elements of the theories of joint venture and partnership without any factual color or support. For example, with respect to the partnership claim (Count V), Plaintiff has introduced a new section titled "The Partnership Between Brooke's Bonding and Continental Heritage Insurance Company" that merely describes an arms-length relationship between a bond business and an insurer. (*FAC* ¶ 42-47.) Similarly, with respect to the joint venture claims, Plaintiff only includes the conclusory statement that the pairings of BB Bonding with On Time Bonding and Freedom Monitoring, respectively, gave the parties "an equal right to control." (*See FAC,* ¶¶ 160, 166.) But Plaintiff has not alleged ***any*** factual allegations in support of an equal right to control. (*See id.* ¶ 156-161; 162-167.) And, Plaintiff has failed to allege any facts in support of a common purpose and equal control. And that is for good reason. Plaintiff has admitted that each company has distinct and different purposes, from bail bonding to locations services to insurance. And each completely controls the conduct of its purpose, with no shared control or input from the other.

The Complaint describes entirely separate entities, responsible for different, albeit related, aspects of private bail bonding services provided to Tennessee criminal defendants. On Time Bonding, like BB Bonding, is a bail bonding service "authorized by the Davidson County Criminal Courts to market [its] services in Davidson County." (*FAC* ¶ 37.) Freedom Monitoring "provides ankle monitors and GPS monitoring services to Brooke's Bonding as part of [BB] Bonding's bail bonding activities." (*Id.*) And Plaintiff

specifically differentiated BB Bonding's responsibilities in the bail bonding process ("finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with conditions of bail, and ensuring the defendant appeared for his or her court hearings") from CHIC's responsibilities ("provid[ing] financial backing"). (*Id.* ¶ 43.) None of the bail bonding entities contributes equally to or equally controls the location services entity. None of the bail bonding entities contributes equally to or equally controls the insurance entities. Each entity performs its duties independently and free from the control of the others.

*Finally*, Plaintiff cannot use the legal theories of joint venture and partnership to sidestep Tennessee's abolishment of joint and several liability. Plaintiff tries to establish joint and several liability against each of the respective Defendants with whom Plaintiff pairs BB Bonding. (*See id.*, Count III ¶ 161 ("Because Lauren Johansen was injured and killed as a result of Brooke's Bonding's and On Time Bonding's negligent, reckless, and/or intentional acts pursuant to their joint venture, they should be held jointly and severally liable for any judgment awarded to Plaintiff against either of them."); Count IV ¶ 167 (same); and Count VI ¶ 172 (same).) But Tenn. Code Ann. 29-11-107(a) has significantly limited joint and several liability in the State of Tennessee, providing "[i]f multiple defendants are found liable in a civil action governed by comparative fault, a defendant shall only be severally liable for the percentage of damages for which fault is attributed to such defendant by the trier of fact, and no defendant shall be held jointly liable for any

19

damages." And Plaintiff has not plead any exception to this bar that would apply to the Defendants in this matter.

Without any factual support, much less factual support for relationships that are consistent with a "common purpose" or "joint business undertaking," the Court should dismiss Counts III, IV, and V against BB Bonding with prejudice.

## CONCLUSION

For the foregoing reasons, the BB Bonding Defendants respectfully request the Court dismiss with prejudice: (1) Counts I (Wrongful Death) and Count II (42 U.S.C. § 1983), against Ms. Harlan-Evitts; and (2) Counts II (42 U.S.C. § 1983), III (Joint Venture), IV (Joint Venture), and V (Partnership Liability), against BB Bonding.

20

Respectfully submitted,

/s/ *William N. Helou*
William N. Helou (#22839)
WSMLEGAL PLLC
2817 West End Avenue
Suite 126-07
Nashville, TN 37203
(615) 900-5585
whelou@wsmlegal.com

and

/s/ *James Bryan Lewis*
James Bryan Lewis (#15116)
1300 Division Street, Suite 307
Nashville, Tennessee 37203
(615) 256-8181
bryan@bryanlewislaw.com

*Counsel for Defendants Brooke's Bail Bonding, LLC, and Brooke Harlan-Evitts*

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was submitted to the Court's electronic filing system on October 14, 2025. For those parties for whom counsel has filed a notice of appearance or other pleading, each of which is noted below, counsel will receive service via the Court's CM/ECF system. As to the parties who have not been served a summons and/or had counsel file a notice of appearance, they shall be served via first class mail at the addresses below.

| | |
|---|---|
| Philip Elbert<br>Elizabeth Tipping<br>Satchel Fowler<br>**Womble Bond Dickinson (US) LLP**<br>1222 Demonbreun St, Ste 1201<br>Nashville, TN 37203<br>(629) 312-1823<br>phil.elbert@wbd-us.com<br>liz.tipping@wbd-us.com<br>satchel.fowler@wbd-us.com<br><br>*Counsel for Robert Lance Johansen* | Matt Pietsch<br>**Gordon Rees Scully Mansukhani**<br>4031 Aspen Grove Dr, Ste 290<br>Franklin, TN 37067<br>mpietsch@grsm.com<br><br>*Counsel for Unserved Party American Contractors Indemnity Company* |
| Joseph Zanger<br>**Zanger Law Firm**<br>135 Clif Garret Dr<br>White House, TN 37188<br>joe@zangerlaw.com<br><br>*Counsel for Nakeda Wilhoite and Freedom Monitoring, LLC* | Tyrell White d/b/a On Time Bonding<br>704 Pin Oak Dr<br>Antioch, TN 37013 |
| Neicola McMillian<br>1018 32nd Ave N.<br>Nashville, TN 37209 | Alisha Ridley<br>101 Davis Park Drive, Unit 119<br>Smyrna, TN 37167 |

/s/ *William N. Helou*
William N. Helou