IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **ROBERT LANCE JOHANSEN as**<br>**administrator of the estate of**<br>**LAUREN JOHANSEN,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BROOKE'S BAIL BONDING, LLC,** *et al*.<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)     **Case No.: 3:25-cv-00690**<br>)     **Judge Trauger**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT AMERICAN CONTRACTORS INDEMNITY COMPANY

Defendant American Contractors Indemnity Company ("ACIC") submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Amended Complaint [Doc. 47] ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion") for failure to state a claim upon which relief may be granted.

### I.    INTRODUCTION.

The death of Lauren Johansen ("Ms. Johansen") at the hands of Bricen Rivers ("Mr. Rivers") on July 2, 2024 is admittedly tragic. However, the Complaint filed by Ms. Johansen's father, which seeks to establish liability against ACIC on the legally unsupported and factually erroneous premise that ACIC[1] partnered with On Time Bail Bonding ("On Time Bonding") to provide bail bonding services in Davidson County, Tennessee in 2024, is misguided, fails as a

---

[1] ACIC is a California-domiciled surety bond company. Doc. 47 at ¶¶ 9, 50.

matter of law, and should be dismissed with prejudice as against ACIC. Plaintiff's allegations regarding the nature of the legal relationship between ACIC and On Time Bonding are not supported by the factual allegations contained in the Complaint. For purposes of this motion, even if Plaintiff's factual allegations were true (and they are not), Plaintiff's claims that ACIC should be held responsible for Ms. Johansen's death solely on the basis of On Time Bonding's alleged negligent, reckless, malicious, and/or deliberately indifferent conduct in providing bail bonding services cannot support liability against ACIC. The Complaint simply does not, and cannot, allege sufficient facts – as opposed to impermissible legal conclusions couched as facts – to prove that ACIC was engaged in any "common purpose" or "joint business undertaking" in 2024 with On Time Bonding (in Davidson County, Tennessee or elsewhere), or that ACIC had any role whatsoever in Mr. Rivers' release from custody.

The Complaint asserts three separate causes of action against ACIC: (1) Wrongful Death Liability; (2) 42 U.S.C. § 1983 Liability; and (3) Partnership Liability. However, as the Complaint does not contain any factual allegations that ACIC played any role in the release from custody, GPS monitoring, supervision or compliance with the bond conditions pertaining to Mr. Rivers, the gravamen and sole claim for any liability against ACIC is entirely premised upon Plaintiff's allegation that ACIC is "jointly and severally liable for the [alleged] wrongful conduct of On Time Bonding because ACIC and On Time Bonding were partners in a bail bonding partnership for profit, and On Time Bonding's [alleged] negligent, reckless, and/or malicious actions took place in the course of the partnership's business." Doc. 47 at ¶¶ 127, 173-177. Accordingly, this Motion focuses on the fatal flaws in Plaintiff's theory of partnership liability against ACIC. As explained below, all claims against ACIC must be dismissed with prejudice pursuant to Rule 12(b)(6).

2

## II. FACTUAL BACKGROUND.

According to the Complaint, on or about December 11, 2023, Mr. Rivers was arrested and ultimately charged with especially aggravated kidnapping, aggravated stalking, and coercion of a witness arising from his assault of his girlfriend, Ms. Johansen, in Nashville, Tennessee. Doc. 47 at ¶¶ 53-55. The criminal case was assigned to Judge Blackburn in Division III of Davidson County's Criminal Court, and Mr. Rivers' bail was initially set at $250,000. *Id*., at ¶¶ 56-57. On April 3, 2024, the criminal court lowered the bail to $150,000, and, at a June 5, 2024 bond hearing, the court subsequently set the bond conditions for Mr. Rivers' release, which included the requirements that, among other things, Mr. Rivers wear a GPS bracelet, stay in Davidson County, and stay away from Ms. Johansen. *Id*., at ¶¶ 58-69.

The Complaint alleges that Defendants Brooke's Bail Bonding, LLC ("Brooke's Bonding") and On Time Bonding agreed to split the cost of the $150,000 bail, but that Brooke's Bonding – and not On Time Bonding – took custody of Mr. Rivers upon his June 24, 2024 release from jail and transported Mr. Rivers to the Brooke's Bonding office. *Id*., at ¶¶ 75-78. Brooke's Bonding is alleged to have made arrangements with Defendant Freedom Monitoring, LLC ("Freedom Monitoring") to affix a GPS ankle monitor on Mr. Rivers at the Brooke's Bonding office. *Id*., at ¶¶ 79-81.

Plaintiff alleges that the agents from Brooke's Bonding failed to properly program the GPS monitor so as to generate an alert if Mr. Rivers left Davidson County, and that agents from Brooke's Bonding purchased a bus ticket and facilitated Mr. Rivers' travel to Mississippi (in violation of the bail conditions). *Id*., at ¶¶ 81-84. The remainder of the factual allegations contained in the Complaint similarly allege that the only interactions and communications

3

regarding Mr. Rivers' whereabouts, the functioning of his GPS monitor and his compliance – or lack thereof – with his bond conditions involved agents of Brooke's Bonding – and not On Time Bonding. *Id.*, at ¶¶ 86-107. And, of course, there are no allegations whatsoever that ACIC had any involvement at all in any of the events leading to the death of Ms. Johansen.

Despite the fact that the Complaint contains no allegations whatsoever that ACIC played any role in the release from custody, GPS monitoring, supervision or compliance with the bond conditions pertaining to Mr. Rivers,[2] Plaintiff nonetheless claims that ACIC is "jointly and severally liable for the [alleged] wrongful conduct of On Time Bonding because ACIC and On Time Bonding were partners in a bail bonding partnership for profit, and On Time Bonding's [alleged] negligent, reckless, and/or malicious actions took place in the course of the partnership's business." *Id.*, at ¶¶ 127, 173-177. Even if these allegations were true (they are not), they do not support a claim against ACIC.

Rather than pleading actual facts – as opposed to legal conclusions – that Tennessee law might recognize as establishing the existence of a partnership,[3] Plaintiff instead relies solely only on the barest of threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. Plaintiff's allegation that ACIC and On Time Bonding "combined their property, labor, experience, and/or money in order to carry out a bail bonding service for profit,"

---

[2] The Complaint alleges that ACIC, a California-domiciled surety bond company, provided "financial backing" to On Time Bonding that allowed On Time Bonding "to bond out criminal defendants beyond what On Time Bonding's individual liquidity would otherwise allow." Doc. 47 at ¶¶ 9, 50.

[3] To be clear, a partnership is a legal theory that describes relationships between parties and does not itself amount to a standalone cause of action. *See* Tenn. Code Ann. §§ 61-1-201(a) ("A partnership is an entity distinct from its partners.").

4

*id*., at ¶ 174, is precisely such a conclusory statement that amounts to nothing more than a recitation of a legal element of a cause of action.

The only factual allegations that even mention ACIC's alleged business relationship with On Time Bondingconsist of the following:

- On Time Bonding performed the "traditional aspects of its bail bonding services," including finding clientele, appearing in court, securing the release of a criminal defendant, ensuring the defendant complied with the conditions of bail, and ensuring the defendant appeared for his or her court hearings. Doc. 47 at ¶ 49.

- ACIC provided financial backing (in the form of a surety bond) that allowed On Time Bonding to bond out criminal defendants beyond what On Time Bonding's individual liquidity would otherwise allow. *Id*., at ¶¶ 50, 175.

- When a criminal defendant paid a premium for bail bonding services, On Time Bonding would receive a portion of that premium (in exchange for the surety bond provided). *Id*., at ¶¶ 51, 176.

- If a criminal court required forfeiture of a bond, On Time Bonding and ACIC shared responsibility for payment of the forfeited bond (pursuant to the surety bond) to the criminal court. *Id*., at ¶ 52.

Even if these factual allegations were true as it pertained to the alleged business relationship between ACIC and On Time Bonding in 2024 – which they are not – the Complaint fails to satisfy the legal elements to support a claim for liability against ACIC under the theory of an implied partnership in Tennessee, or any other theory.

5

### III. STANDARD OF REVIEW

The purpose of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is to enable a defendant to challenge the legal sufficiency of a complaint. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2009) (citing *Rutman Wine Co. v. E.J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, which raise a right to relief above the speculative level and state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*., at 681.

### IV. LAW AND ARGUMENT.

#### A. The Complaint Fails to Establish Partnership Liability Against ACIC.

##### 1. Partnerships in Tennessee.

In Tennessee, a general partnership is formed by the "association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit." Tenn. Code Ann. §§ 61-1-101(7); 61-1-202(a). To determine whether a partnership exists, courts must ascertain the intention of the parties. *Id*. In the absence of a written agreement, the requisite intention is that which is deducible from the parties' actions. *Wyatt v. Brown*, 281 S.W.2d 64, 67 (1955). The parties need only intend "to do the things which constitute a partnership." *Bass v. Bass*, 814 S.W.2d

6

38, 41 (Tenn. 1991). A partnership results if the parties "place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them." *Id*.

### 2. Implied Partnerships.

A partnership may be formed explicitly or may be formed implicitly based on the parties' actions. *Bass*, 814 S.W.2d at 41. "[T]he existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Montgomery v. Montgomery*, 181 S.W.3d 720, 727 (Tenn. Ct. App. 2005) (quoting *Bass*, 814 S.W.2d at 41). To determine if a partnership exists, the court is required to consider "all of the relevant facts, actions, and conduct of the parties...and [n]o one fact or circumstance is conclusive." *Webster v. Estate of Dorris*, No. M201402230COAR3CV, 2016 WL 502009, at *4 (Tenn. Ct. App. Feb. 4, 2016) (internal quotations removed) (quoting *Martin v. Coleman*, 19 S.W.3d 757, 761 (Tenn. 2000)). "When a partnership agreement is not in writing, the party alleging the existence of a partnership carries the burden of proving that fact by clear and convincing evidence." *Story v. Lanier*, 166 S.W.3d 167, 175 (Tenn. Ct. App. 2004); *see also Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 798 (Tenn. Ct. App. 2010) ("[C]lear and convincing evidence is required to establish an implied partnership.") *Webster*, 2016 WL 502009, at *4 (What will constitute a partnership is a matter of law).

In *Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 3:13-cv-00260, 2016 WL 2770634, at *4 (M.D. Tenn. May 13, 2016), a claimed implied partnership did not exist where the parties did not have a written joint venture or partnership agreement; the parties did not share losses, profits, or financial records with one another; the parties did not file joint tax returns or

7

partnership tax returns involving the other; the parties did not consider themselves co-owners of the other's business; and the payments made by one business to another were based on a contracted amount, not based on a calculation of profit.[4]

In doing so, this Court relied on *Swecker v. Swecker*, 360 S.W.3d 422 (Tenn. Ct. App. 2011), wherein the Tennessee Court of Appeals affirmed the trial court's finding that an "association of father and son to carry on as co-owners of a [dairy farm] for profit resulted in the formation of a partnership, because they had a joint bank account, they had the checks for milk issued in both names, and they had the cattle registered in both names." *Id*., at 425, 427 (internal quotation marks omitted). The dairy farm's business profits were placed into a joint bank account to which each partner had full control. *Id*., at 426-27.

Similarly, in *Webster v. Estate of Dorris*, No. M201402230COAR3CV, 2016 WL 502009, at *5 (Tenn. Ct. App. Feb. 4, 2016), the Tennessee Court of Appeals affirmed the trial court's ruling that there was no implied partnership or joint venture between a contractor and his real estate agent wife in the development and sale of a home. The wife did not have the authority to control any aspect of the company's business and did not have access to the company's accounts. *Id.* Although the wife earned a commission from the sale of the home, the court found

---

[4] The Amended Complaint no longer pleads a separate cause of action against ACIC on the basis of joint venture liability. As the Court in *Quality Mfg. Sys., Inc.* makes clear, no such claim could survive under the allegations made in this case because, although "[a] joint venture is similar, but not identical, to a partnership, and has been described by our Supreme Court as 'something like a partnership,'" *Id*., at *4 (citing *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001) (quoting *Fain v. O'Connell*, 909 S.W.2d 790, 792 (Tenn. 1995)), joint venture liability requires proof that each party has "the equal right" "to control the venture as a whole and any relevant instrumentality." *Id*., at *4 (citing *Webster*, 2016 WL 502009, at *7). The allegations in the Complaint make clear that ACIC and On Time Bonding never had "the equal right" to "control the [bail bonding services] as a whole [nor] any relevant instrumentality." *Id.*

8

that a real estate agent commission (which result from a split or percentage payment from the profits of the sale transaction) did not amount to profit sharing to trigger or give rise to the existence of an implied partnership or joint venture. *Id.* at *6-7.

### 3. ACIC and On Time Bonding Were Not a Partnership.

The Complaint claims that the alleged profit-sharing between ACIC and On Time Bonding took the form of splitting a portion of the bond premium payment made by or on behalf of each individual criminal defendant for On Time Bonding's bail bonding services based on a pre-determined contracted amount, and in exchange for the financial backing provided by ACIC to On Time Bonding in the form of a surety bond. *Id.*, at ¶¶ 51, 175. This payment for a service is no different than the payment of a commission to the real estate agent the *Webster* court held did not constitute "profit-sharing" for purposes of establishing an implied partnership. *Webster*, 2016 WL 502009, at *6-7 (Although the wife earned a commission from the sale of the home in the form of a real estate agent commission (which resulted from a split or percentage payment from the profits of the sale transaction), this did not amount to profit sharing to trigger or give rise to the existence of an implied partnership or joint venture). Likewise, the Complaint alleges that ACIC and On Time Bonding shared in the losses, but only to the extent and both ACIC and On Time Bonding would share responsibility for payment of an individual bond in the event the bond was forfeited to the criminal court (pursuant to the surety bond purchased by On Time Bonding and provided by ACIC). *Id.*, at ¶¶ 52, 176.

Further still, the Complaint claims that On Time Bonding was the only party in the alleged business relationship between ACIC and On Time Bonding who performed the traditional aspects of bail bonding services, including "securing the release of a criminal defendant, ***ensuring the***

9

***defendant complied with the conditions of bail***, and ensuring the defendant appeared for his or her court hearings. *Id*., at ¶¶ 58-69 (emphasis added). There is no allegation that ACIC performed any of those responsibilities.

Even accepting Plaintiff's factual allegations as true – and not the Complaint's effort to utilize legal conclusions couched as facts – the following is clear, which warrants dismissal of the Complaint:

- There are no allegations that ACIC and On Time Bonding had a written joint venture or partnership agreement;

- There are no allegations that ACIC and On Time Bonding shared losses, profits, or financial records with one another;

- There are no allegations that ACIC and On Time Bonding filed joint tax returns or partnership tax returns involving the other;

- There are no allegations that ACIC and On Time Bonding considered themselves co-owners of the other's business;

- There are no allegations that the alleged split of a portion of the individual bond premium payments made by On Time Bonding to ACIC were based on anything other than a contracted amount for services provided (the surety bond provided by ACIC);

- There are no allegations that ACIC received or was otherwise entitled to a share of On Time Bonding's business profits; and

- There are no allegations that ACIC and On Time Bonding were co-owners of any business or that each company had a right to control the other's business. *See* Tenn. Code Ann. §§ 61-1-101(7); 61-1-202(a); *Webster*, 2016 WL 502009, at *7.

Accordingly, as a matter of law, the Complaint before the Court in this case does not contain sufficient facts – much less clear and convincing evidence – upon which relief can be granted against ACIC on the legal theory that ACIC and On Time Bonding were part of an implied partnership or joint venture. In other words, the allegations in the Complaint do not raise a right to relief against ACIC on the basis of any claim above the speculative level nor do they state a claim for relief that is plausible on its face. Accordingly, ACIC's Motion must be granted.

## V.   CONCLUSION

Based upon the argument and authority cited above, ACIC requests that the Court grant the Motion and dismiss Plaintiff's Complaint against ACIC with prejudice.

**Dated: October 24, 2025.**      Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By:    *s/ Matthew C. Pietsch*
      **MATTHEW C. PIETSCH**, TN BPR No. 024659
      4020 Aspen Grove Drive, Suite 500
      Franklin, TN 37067
      Phone: 615-722-9000
      Fax: 615-970-7490
      mpietsch@grsm.com

*Counsel for Defendant*
*American Contractors Indemnity Co.*

12

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that a true and accurate copy of the foregoing was electronically filed with the Court and served on all parties of record via the Court's electronic filing system on **October 24, 2025**.

| | |
|---|---|
| Philip N. Elbert<br>Elizabeth Tipping<br>Satchel Fowler<br>Womble Bond Dickinson (US) LLP<br>1222 Demonbreun Street, Suite 1201<br>Nashville, TN 37203<br>phil.elbert@wdb-us.com<br>liz.tipping@wbd-us.com<br>satchel.fowler@wbd-us.com<br><br>Attorneys for Plaintiff | Bryan Lewis<br>Bryan Lewis Law<br>1300 Division Street, Suite 307<br>Nashville, TN 37203<br>bryan@bryanlewislaw.com<br><br>Will Helou<br>WSMLegal PLLC<br>2817 West End Avenue, Suite 126-107<br>Nashville, TN 37203<br>whelou@wsmlegal.com<br><br>Attorneys for Brooke's Bail Bonding, LLC, Brooke Harlan-Evitts and Continental Heritage Insurance Company |
| Joseph Zanger<br>Zanger Law Firm<br>135 Clif Garret Drive<br>White House, TN 37188<br>joe@zangerlaw.com<br><br>Attorney for Nakeda Wilhoite and Freedom Monitoring LLC | Tyrell White d/b/a On Time Bonding<br>704 Pin Oak Dr.<br>Nashville, TN 37209<br><br>Alisha Ridley<br>101 Davis Park Drive Unit 119<br>Smyrna, TN37167 |

                         */s/ Matthew C. Pietsch*