**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE**

| | | |
|---|---|---|
| **ROBERT LANCE JOHANSEN as** | ) | |
| **administrator of the estate of** | ) | |
| **LAUREN JOHANSEN,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **3:25-cv-00690** |
| **v.** | ) | |
| | ) | **Judge Aleta Trauger** |
| **BROOKE'S BAIL BONDING, LLC et al.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT CONTINENTAL HERITAGE**
**INSURANCE COMPANY'S MOTION TO DISMISS**

---

The Amended Complaint states facts demonstrating that Defendant Continental Heritage Insurance Company ("Defendant" or "CHIC") and Brooke's Bail Bonding, LLC ("Brooke's Bail"), are part of a partnership to provide bail bonding services in Davidson County. Brooke's Bail serves as active partner, managing the day-to-day affairs of the partnership. CHIC serves as a "silent" or "dormant" partner, extending a massive line of credit and executing powers of attorney so that Brooke's Bail's agents can post bonds against that credit. Brooke's Bail and CHIC's partnership is a typical sort of pairing in the partnership context. 68 C.J.S. Partnership § 9, *Classes of Partners* (May 2025) ("Partnerships are often created in which a silent partner contributes money, credit, or property, and an active partner contributes labor and openly manages the business." (citing *In re Lamb*, 36 B.R. 184, 189 (Bankr. E.D. Tenn. 1983))). Together, Brooke's Bail and CHIC split the partnership's profits earned from the premiums paid for bail bonding services, and when the Court orders forfeiture of a bond, they bear the losses together.

Under Tennessee law, partners are jointly and severally liable for wrongs committed in the course of partnership business. Because Brooke's Bail posted Bricen Rivers's bond in the course of its partnership with CHIC, and because Lauren Johansen was killed after Brooke's Bail affirmatively released Bricen Rivers and failed to surrender him to state custody after learning that he violated the conditions of his bond, CHIC is jointly and severally liable for Brooke's Bail's wrongs.

## BACKGROUND

Defendant Brooke's Bail Bonding, LLC operates as a for-profit bail bonding company in Davidson County. (Am. Compl. ¶ 37.) Defendant Brooke Harlan-Evitts is the owner of Brooke's Bail and exercises managerial authority over Brooke's Bail's activities. (*Id.* ¶¶ 4, 89.)

1

Bail bonding companies are an integral part of Davidson County's criminal justice system and operate as *de facto* pretrial services for many criminal defendants out on bond. (*Id.* ¶¶ 29-34.) Bail bonding companies are heavily regulated by Tennessee statute and criminal court rules. (*Id.* ¶¶ 26-27.) One such requirement is that the bail bonding company maintain sufficient liquidity to pay a forfeited bond. (*Id.*) Rather than maintain large amounts of cash liquidity, many bail bonding companies partner with insurance companies who execute powers of attorney that allow agents of the bail bonding companies to post bonds against lines of credit. (*Id.* ¶¶ 38-41.) Brooke's Bail partners with one such insurance company, Continental Heritage Insurance Company ("CHIC"). (*Id.* ¶¶ 41-47.) Brooke's Bail manages the day-to-day affairs of the bail bonding partnership, whereas CHIC provides financial backing that allows the partnership to post bonds for more clients than Brooke's Bail otherwise could on its own. (*Id.*) Brooke's Bail and CHIC share profits and losses; whenever a criminal defendant pays a premium, Brooke's Bail and CHIC each receive a portion of that premium, and whenever the criminal court requires forfeiture of a bond, Brooke's Bail and CHIC share the cost of paying the bond to the Court. (*Id.*)

In December 2023, nonparty Bricen Rivers ("Rivers") was arrested in Davidson County for battering Decedent Lauren Johansen and was charged with three felonies, including aggravated stalking. (*Id.* ¶¶ 53-55.) Rivers's criminal case was assigned to Judge Blackburn of Division III of the Davidson County Criminal Court. (*Id.* ¶ 56.) The criminal court initially set his bail at $250,000 but ultimately lowered it $150,000. (*Id.* ¶¶ 56-57.) The criminal court also placed several conditions on Rivers's bond, including that he stay under GPS monitoring, remain in Davidson County, and keep away from Lauren Johansen. (*Id.* ¶¶ 68.) Brooke's Bail formed an agreement with another bail bond company, Defendant On Time Bail Bonding ("On Time"), to each take responsibility for $75,000 of the bond. (*Id.* ¶¶ 65-66.) The Court memorialized the

2

conditions of bond in an order and an agent from Brooke's Bail signed that order affirmatively acknowledging the conditions of the bond and Brooke's Bail's responsibility to surrender Rivers as soon as possible after notification of any violation. (*Id.* ¶ 72.)

One of Brooke's Bail's agents, Nakeda Wilhoite, is also the owner of a GPS monitoring company, Defendant Freedom Monitoring, LLC. (*Id.* ¶ 5.) Once Rivers arrived at Brooke's Bail's office, Ms. Wilhoite directed another of Brooke's Bail's agents, Alisha Ridley, to affix a GPS ankle monitor to Rivers's ankle. (*Id.* ¶ 80-81.) Then, despite clear instruction that Rivers was to stay in Davidson County, agents from Brooke's Bail immediately bought him a bus ticket and facilitated his travel to Mississippi. (*Id.* ¶ 82.)

Several days later, Ms. Harlan-Evitts and Brooke's Bail's other agents began having issues with Rivers's ankle monitor and asked him to return to Brooke's Bail's office. (*Id.* ¶ 86.) Rivers returned to Brooke's Bail's office in Davidson County and met with Wilhoite, who replaced Rivers's ankle monitor. (*Id.* ¶ 90.) Ms. Harlan-Evitts was aware that Rivers and Ms. Wilhoite were meeting at Brooke's Bail's office. (*Id.* ¶¶ 89, 91.) Ms. Harlan-Evitts was also aware of the numerous conditions on Rivers's bond. (*Id.* ¶ 89.) Nonetheless, Ms. Harlan-Evitts did not direct Ms. Wilhoite or any other agent of Brooke's Bail to arrest Rivers and return him to state custody, nor did she contact the court or law enforcement to effectuate his arrest. (*Id.*)

Despite knowledge that Rivers had violated the conditions of his bond, Ms. Harlan-Evitts authorized the release of Rivers and Ms. Wilhoite actually released Rivers from Brooke's Bail's office. (*Id.* ¶ 99). Rivers again traveled to Mississippi, and Ms. Harlan-Evitts, despite knowledge that Rivers was once again in violation of his bond, took no legitimate efforts to compel him to comply with the conditions of his release for multiple days. (*Id.* at ¶¶ 101-106.) Rivers then kidnapped Lauren Johansen and beat her to death. (*Id.* ¶ 107.)

3

## **LEGAL STANDARD**

In considering a Rule 12(b)(6) motion to dismiss, the Court's task is only to determine "whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *United States v. Se. Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506, 511 (2002)). In other words, a complaint need only "raise a right to relief above the speculative level," by alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (first quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Three steps control this determination. First, "the court must accept all of the Plaintiff's factual allegations as true." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citing *Logsdon v. Harris*, 492 F.3d 334, 340 (6th Cir. 2007)). Second, "the court must draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Logsdon v. Harris*, 492 F.3d at 340). Third, "the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Id.* (citing *Iqbal*, 556 U.S. at 679. And then, "if it is at all possible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his Complaint, the case proceeds." *Id.*

<u>**DISCUSSION**</u>

**I.    The Amended Complaint states facts that support vicarious liability under a theory of joint venture and partnership liability against CHIC**

**a.    Plaintiff may plead theories of vicarious liability as separate counts**

The Amended Complaint makes clear that the partnership count is intended to create joint and several (in this case, vicarious) liability against CHIC for the Amended Complaint's substantive counts.  (*See* Am. Compl. ¶¶ 161, 167, 172.)

To the extent that Defendant is arguing that Plaintiff has failed to comply with some technical rule of pleading by listing a theory of vicarious liability as a separate count, the Court should reject such an argument.  First, the Amended Complaint contains similar assertions of vicarious/joint and several liability within the substantive counts.  (Am. Compl. ¶¶ 126-27.) Second, theories of vicarious liability are frequently alleged as separate counts; most commonly, civil conspiracy.  *See, e.g., 1st Am. Title Ins. Co. v. Cumberland Cnty. Bank*, 633 F. Supp. 2d 566, 588 (M.D. Tenn. 2009).  Finally, even if separate counts are technically improper, the substance of the Amended Complaint is clear:  CHIC may be liable for Brooke's Bail's wrongs because they were in business together as a partnership.  The purpose of pleading is not to pit counsel in a "game of skill" that tests technical compliance, it is to "facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).  The Amended Complaint alleges facts showing that CHIC and Brooke's Bail were partners.  So, if in fact Plaintiff has failed to jump through some technical hurdle, the Court should excuse the same.

**b.    The Amended Complaint alleges a Partnership between Brooke's Bail and CHIC**

Under Tennessee law, a partnership is "an association of two or more persons to carry on as co-owners of a business or other undertaking for profit."  *Lewis v. Calvert*, No. 3:17-CV-

5

000019, 2019 WL 295089, at *2 (M.D. Tenn. Jan. 23, 2019) (citing Tenn. Code Ann. § 61-1-101(7)). A partnership is created by contract, which can be express or implied. *Id.* (citing *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). An implied contract of partnership exists if the parties intended to "do the things that constitute a partnership." *Id.* (citing *Bass*, 814 S.W.2d at 41). This is true regardless of whether the parties' express purpose is to create or avoid creating a partnership. *Id.* (quoting *Bass*, 814 S.W.2d at 41). In sum, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Reed v. Thurman*, No. E2014-00769-COA-R3CV, 2015 WL 1119449 (Tenn. Ct. App. Mar. 10, 2015) (quoting *Bass*, 814 S.W.2d at 41). Whether a partnership exists is a fact intensive inquiry. *See Bass*, 814 S.W.2d at 41 ("[E]ach case must be decided upon consideration of all relevant facts, actions, and conduct of the parties.").

Importantly, proof of profit sharing creates a presumption that a partnership exists. Tenn. Code Ann. § 61-1-202(c)(3). Likewise shared losses is an important factor in demonstrating a partnership. *See Wantiez v. Carlson*, No. C.A. 637, 1986 WL 1151 (Tenn. Ct. App. Jan. 28, 1986) ("[P]erhaps the most significant fact is that Mr. Wantiez actually shares in and suffered the consequences of the business having losses"). The Amended Complaint alleges that Brooke's Bail and CHIC shared profits and losses in form of bond premiums paid, and bonds forfeited to the Court. (*See* Am. Compl. ¶¶ 46-47, 170.) Thus, Plaintiff enjoys a presumption that Brooke's Bail and CHIC were partners. Given that it is impossible for a defendant to rebut a presumption under the 12(b)(6) standard, *see, e.g. Stein v. Sparks*, No. 1:08-CV-142, 2008 WL 4356964, at *2 (E.D. Tenn. Sept. 17, 2008); *accord SCF Ariz. V. Wachovia Bank, N.A.*, No. 09 CIV. 9513 WHP, 2010 WL 5422505, at *9 (S.D.N.Y. Dec. 14, 2010), the Court may end its analysis here.

6

The Amended Complaint also alleges other facts that, viewed together, state a claim that Brooke's Bail and CHIC operate as partners. Brooke's Bail's role in the partnership is to find clientele, appear in court, secure the release of criminal defendants, ensure the criminal defendant complied with conditions of bond, and ensure that the criminal defendant appears in court, and CHIC provides financial backing and executes powers of attorneys to allow Brooke's Bail to bond out more criminal defendants than it could alone. (Am. Compl. ¶¶ 43-44.) Brooke's Bail and CHIC's arrangement is a familiar, even prototypical, one: An active partner who manages the day-to-day affairs of the partnership and a deep-pocketed silent partner who provides financial backing. *See, e.g.,* 68 C.J.S. Partnership § 9 (May 2025) ("Partnerships are often created in which a silent partner contributes money, credit, or property, and an active partner contributes labor and openly manages the business." (citing *In re Lamb*, 36 B.R. 184, 189 (Bankr. E.D. Tenn. 1983))); 59A Am. Jur. 2d Partnership § 44 (May 2025) ("Partners that do not participate in running the business may be liable for partnership obligations like other partners.").

Ultimately, Plaintiff cannot allege what he does not know about the inner-workings of Brooke's Bail and CHIC's business relationship. *See, e.g., Brook v. Sanofi-aventis U.S., LLC*, No. 2:14-CV-976, 2014 WL 7272243, at \*4 (S.D. Ohio Dec. 18, 2014) ("To decide the issue against Plaintiff here on the understandably limited context of an initial complaint would perhaps not only require more than Plaintiff could reasonably be expected to give, but also would impose more stringent requirements than notice pleading under Federal Rule of Civil Procedure 8 demands."); *cf. Branson v. Alliance Coal, LLC*, No. 4:19-CV-00155, 2021 WL 1031002, at \*5 (W.D. Ky. Mar. 17, 2021) ("The remaining factors require insight into the partnership's internal structure, a difficult task without discovery." (citing *Malone v. Stanley Black & Decker, Inc.* 965 F.3d 499, 506 (6th Cir. 2020)) (considering a Rule 12(b)(2) motion)). But the publicly available information

about Brooke's Bail and CHIC's relationship indicates that they share profits and losses in a partnership between dormant and active partners. These allegations, given the benefit of every reasonable inference, state a plausible claim of a relationship well beyond "merely an arms-length relationship between a bond business and an insurer," (Defs.' Mot. Dismiss 18.)

### c. Tennessee has not abolished partnership liability

Defendant is simply wrong that Tennessee's adoption of comparative fault abolished partnership liability. The statute that Defendant cites, Tenn. Code Ann. § 29-11-107, expressly excludes doctrines of vicarious liability from Tennessee's abolition of joint and several liability. Tenn. Code Ann. § 29-11-107(c); *see also Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 219-220 (2010) ("To the extent that the doctrine of vicarious liability can be considered a species of joint and several liability, we have held that the adoption of comparative fault . . . did not undermine the continuing viability of various vicarious liability doctrines . . . ."); Laurence Pivnick, *Tennessee Circuit Court Practice* § 5:16 (Mar. 2025 update) ("Both the [Tennessee] Supreme Court and the General Assembly concur that in cases involving vicarious liability, the doctrine of joint and several liability, not several liability, applies.").

Tennessee law still recognizes that partners are jointly and severally liable for obligations arising out of their partnership or joint venture. Tenn. Code Ann. § 61-1-306(a) ("[P]artners are liable jointly and severally for all obligations of the partnership . . . ."). Thus, the Court should reject this argument.

## II. CHIC may and should be liable under the Amended Complaint's substantive counts

As discussed in Section I, the Amended Complaint states a claim that, at all relevant times, Brooke's Bail and CHIC were partners in a bail bonding partnership. Tennessee law holds partners jointly and severally liable for conduct performed in the course of partnership business. Tenn.

8

Code Ann. § 61-1-306(a) ("[P]artners are liable jointly and severally for all obligations of the partnership . . . .").

Thus, CHIC would be jointly and severally liable for any judgment against Brooke's Bail for either of the substantive counts, which all relate to Brooke's Bail's conduct as the active partner in Brooke's Bail and CHIC's bail bonding partnership.

Accordingly, and for all of the reasons set forth in Plaintiff's Response to Defendants Brooke Harlan-Evitts and Brooke's Bail Bonding, LLC's Motion to Dismiss, the Court should not dismiss Counts I and II against CHIC.

## CONCLUSION

For the foregoing reasons, the Court should deny CHIC's motion.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Philip N. Elbert*
Philip Elbert, # 009430
Elizabeth Tipping, # 023066
Satchel Fowler, # 039624
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Telephone: (629)-312-1823
phil.elbert@wbd-us.com
liz.tipping@wbd-us.com
satchel.fowler@wbd-us.com

9

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing has been sent via the method indicated below on the following this the 28th day of October 2025.

| Via the Court's E-Filing System | Via U.S. Mail |
|---|---|
| Matt Pietsch<br>**Gordon Rees Scully Mansukhani**<br>4031 Aspen Grove Drive, Suite 290<br>Franklin, TN  37067<br>mpietsch@grsm.com<br><br>*Counsel for American Contractors Indemnity Company* | Tyrell White d/b/a On Time Bonding<br>704 Pin Oak Dr.<br>Antioch, TN 37013 |
| Joseph Zanger<br>**Zanger Law Firm**<br>135 Clif Garret Drive<br>White House, TN 37188<br>joe@zangerlaw.com<br><br>*Counsel for Nakeda Wilhoite and Freedom Monitoring, LLC* | Neicola McMillian<br>1018 32nd Ave N.<br>Nashville, TN 37209 |
| Bryan Lewis<br>**Bryan Lewis Law**<br>1300 Division St. Suite 307<br>Nashville, TN 37203<br>bryan@bryanlewislaw.com<br><br>Will Helou<br>**WSMLegal PLLC**<br>2817 West End Avenue, Suite 126-107<br>Nashville, TN 37203<br>whelou@wsmlegal.com<br><br>*Counsel for Brooke's Bail Bonding, LLC, Brooke Harlan-Evitts, and Continental Heritage Insurance Company* | Alisha Ridley<br>101 Davis Park Drive Unit 119<br>Smyrna, TN 37167 |

*/s/ Philip N. Elbert*
