## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| **ROBERT LANCE JOHANSEN as** | **)** | |
| **administrator of the estate of** | **)** | |
| **LAUREN JOHANSEN,** | **)** | |
| | **)** | |
| **Plaintiff** | **)** | |
| | **)** | **3:25-cv-00690** |
| **v.** | **)** | |
| | **)** | **Judge Aleta Trauger** |
| **BROOKE'S BAIL BONDING, LLC et al.** | **)** | **JURY TRIAL DEMANDED** |
| | **)** | |
| **Defendants.** | **)** | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT
## AMERICAN CONTRACTORS INDEMNITY
## COMPANY'S MOTION TO DISMISS [Doc. No. 59]

---

The Amended Complaint states facts demonstrating that American Contractors Indemnity Company ("Defendant" or "ACIC") and Tyrell White d/b/a On Time Bonding ("On Time"), are part of a partnership to provide bail bonding services in Davidson County. On Time serves as the active partner, managing the day-to-day affairs of the partnership. ACIC serves as a "silent," "dormant," or "secret" partner, extending a massive line of credit so that On Time's agents can post bonds against that credit in far greater amounts and quantities than On Time could on its own. On Time and ACIC's partnership is a typical sort of pairing in the partnership context. 68 C.J.S. Partnership § 9, *Classes of Partners* (May 2025) ("Partnerships are often created in which a silent partner contributes money, credit, or property, and an active partner contributes labor and openly manages the business." (citing *In re Lamb*, 36 B.R. 184, 189 (Bankr. E.D. Tenn. 1983))). Together, On Time and ACIC split the partnership's profits earned from the premiums paid for bail bonding services, and when the Court orders forfeiture of a bond, they bear the losses together.

Under Tennessee law, partners are jointly and severally liable for wrongs committed in the course of partnership business. Because On Time posted Bricen Rivers's bond in the course of its partnership with ACIC, and because Lauren Johansen was killed after On Time failed to take any action to enforce the conditions of Bricen Rivers's bond, ACIC is liable for On Time's acts and omissions as On Time's partner.

## **BACKGROUND**

Defendant Tyrell White does business as a bail bonding sole proprietorship called On Time Bonding ("On Time"). (Am. Compl. ¶ 2.) On Time operates as a for-profit bail bonding business in Davidson County. (*Id.* ¶ 37.)

Bail bonding companies are an integral part of Davidson County's criminal justice system and operate as *de facto* pretrial services for many criminal defendants out on bond. (*Id.* ¶¶ 29-34.)

1

Bail bonding companies are heavily regulated by Tennessee statute and criminal court rules. (*Id.* ¶¶ 26-27.) One such requirement is that the bail bonding company maintain sufficient liquidity to pay a forfeited bond. (*Id.*) Rather than maintain large amounts of cash liquidity, many bail bonding companies partner with insurance companies who execute powers of attorney that allow agents of the bail bonding companies to post bonds against lines of credit.[1] (*Id.* ¶¶ 38-41.) On Time partners with one such insurance company, American Contractors Indemnity Company ("ACIC"). (*Id.* ¶¶ 48-52.) On Time manages the day-to-day affairs of the bail bonding partnership, whereas ACIC provides financial backing that allows the partnership to post bonds for more clients than On Time otherwise could on its own. (*Id.*) On Time and ACIC share profits and losses; whenever a criminal defendant pays a premium, On Time and ACIC each receive a portion of that premium, and whenever the criminal court requires forfeiture of a bond, On Time and ACIC share the cost of paying the bond to the Court. (*Id.*)

In December 2023, nonparty Bricen Rivers ("Rivers") was arrested in Davidson County for battering Decedent Lauren Johansen and was charged with three felonies, including aggravated stalking. (*Id.* ¶¶ 53-55.) Rivers's criminal case was assigned to Judge Blackburn of Division III of the Davidson County Criminal Court. (*Id.* ¶ 56.) The criminal court initially set his bail at $250,000 but ultimately lowered it $150,000. (*Id.* ¶¶ 56-57.) The criminal court also placed several conditions on Rivers's bond, including that he stay under GPS monitoring, remain in Davidson County, and keep away from Lauren Johansen. (*Id.* ¶¶ 68.) On Time formed an agreement with another bail bond company, Defendant Brooke's Bail Bonding, LLC ("Brooke's

---

[1] Of note, the D.C. Circuit Court of Appeals noted a similar paradigm in the immigration context in *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 112 (D.C. Cir. 2020) ("Bail-bond companies, like plaintiffs Statewide Bonding, Inc. and Big Marco Insurance and Bonding Services, LLC, partner with sureties (insurance companies certified by the United States Department of the Treasury) to enter into bond agreements with ICE.")

2

Bail") to each take responsibility for $75,000 of the bond. (*Id.* ¶¶ 65-66.) The Court memorialized the conditions of bond in an order and an agent from both On Time and Brooke's Bail signed that order affirmatively acknowledging the conditions of the bond and Brooke's Bail's responsibility to surrender Rivers as soon as possible after notification of any violation. (*Id.* ¶ 72-73.)

On Time never made any effort to ensure that Rivers complied with the conditions of his bond. (Am. Compl. ¶¶ 117-120.) While On Time willfully disobeyed its obligations to the criminal court, the public, and Lauren Johansen, Brooke's Bail took numerous affirmative acts that put Lauren Johansen in significant danger. First, Brooke's Bail used an unapproved GPS monitoring company to track Bricen Rivers's whereabouts. (*Id.* ¶¶ 79-80.) Second, Brooke's Bail encouraged Bricen Rivers to travel to Mississippi and violate his bond conditions by purchasing him a bus ticket to Mississippi. (*Id.* ¶ 83.) Third, Brooke's Bail released Rivers from its custody despite actual knowledge that he had violated the criminal courts conditions of bail. (*Id.* ¶¶ 97-101.) Finally, Brooke's Bail willfully violated the criminal court's clear instruction to effectuate the arrest of Rivers if he violated the conditions of his bail. (*Id.* ¶¶ 102-06.)

Because of On Time's complete and total failure to make any effort to ensure Rivers was complying with the conditions of bond, Rivers was able to freely move between Mississippi and Tennessee.[2] (*See id.* ¶¶ 117-121.) As a result, Rivers was able to travel to Mississippi, kidnap Lauren Johansen, and beat her to death. (*Id.* ¶ 107.)

---

[2] In ACIC's background section (but not its argument) it suggests that On Time somehow bears less responsibility for Rivers's return to Mississippi and murder of Lauren Johansen because the Amended Complaint alleges that Brooke's Bail took primary responsibility for dealing with and overseeing Rivers. Because ACIC only hints at this point as background, and because On Time has not moved for dismissal, Plaintiff has not addressed the same in his response. To be sure, however, On Time's should not be excused from liability for its willful blindness and disregard of a court's unambiguous order imposing both conditions on Rivers and a duty on On Time to monitor those conditions. And ACIC, as On Time's partner, is equally liable for On Time's acts and omissions.

## **LEGAL STANDARD**

In considering a Rule 12(b)(6) motion to dismiss, the Court's task is only to determine "whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *United States v. Se. Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506, 511 (2002)). In other words, a complaint need only "raise a right to relief above the speculative level," by alleging "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (first quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Three steps control this determination. First, "the court must accept all of the Plaintiff's factual allegations as true." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citing *Logsdon v. Harris*, 492 F.3d 334, 340 (6th Cir. 2007)). Second, "the court must draw all reasonable inferences in the plaintiff's favor." *Id.* (citing *Logsdon v. Harris*, 492 F.3d at 340). Third, "the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Id.* (citing *Iqbal*, 556 U.S. at 679). And then, "if it is at all possible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his Complaint, the case proceeds." *Id.*

4

<u>**DISCUSSION**</u>

**I.  The Amended Complaint alleges facts showing that ACIC and On Time are partners**

    **a.  Plaintiff is not required to plead clear-and-convincing evidence**

The Court should reject ACIC's insinuation that the clear-and-evidence standard applies on a Rule 12(b)(6) motion. It does not. *See, e.g., Socal Powersports, Inc. v. Timken Co.*, No. 5:24-cv-2085, 2025 WL 1222637, at *7 n.6 (N.D. Ohio Apr. 28, 2025); *Brewer v. Lincoln Int'l Corp.*, 148 F. Supp. 2d 792, 813 (W.D. Ky. 2000) ("While the plaintiffs must eventually prove by clear and convincing evidence that these defendants violated the standard of conduct to which directors are held, they need not do so faced with a motion to dismiss for failure to state a claim for which relief can be granted."); *Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, No. 1:19-cv-260, 2019 WL 3066404, at *4 (M.D.N.C. July 12, 2019). And as this Court has acknowledged, a plaintiff "is not required to plead evidence." *Stockley v. Nissan of N. Am., Inc.*, 701 F. Supp. 3d 682, 699 (M.D. Tenn. 2023). So, only the typical Rule 12(b)(6) analysis applies.

    **b.  The Amended Complaint alleges a Partnership between On Time and ACIC**

Under Tennessee law, a partnership is "an association of two or more persons[3] to carry on as co-owners of a business or other undertaking for profit." *Lewis v. Calvert*, No. 3:17-CV-000019, 2019 WL 295089, at *2 (M.D. Tenn. Jan. 23, 2019) (citing Tenn. Code Ann. § 61-1-101(7)). A partnership is created by contract, which can be express or implied. *Id.* (citing *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). An implied contract of partnership exists if the parties intended to "do the things that constitute a partnership." *Id.* (citing *Bass*, 814 S.W.2d at 41). This

---

[3] Tennessee's revised uniform partnership act defines "person" as "an individual, corporation, limited liability company, business trust, estate, trust, partnership (whether general or limited), association, joint venture, government, governmental subdivision, agency, or instrumentality, custodian, nominee or any other individual or entity in its own or any representative capacity, or any other legal or commercial entity[.]" Tenn. Code Ann. § 61-1-101(13)

5

is true regardless of whether the parties' express purpose is to create or avoid creating a partnership. *Id.* (quoting *Bass*, 814 S.W.2d at 41). In sum, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Reed v. Thurman*, No. E2014-00769-COA-R3CV, 2015 WL 1119449 (Tenn. Ct. App. Mar. 10, 2015) (quoting *Bass*, 814 S.W.2d at 41). Whether a partnership exists is a fact intensive inquiry. *See Bass*, 814 S.W.2d at 41 ("[E]ach case must be decided upon consideration of all relevant facts, actions, and conduct of the parties.").

ACIC's first argument relies on its incorrect restatement of the Amended Complaint's factual allegations. ACIC contends that,

> The Complaint claims that the alleged profit-sharing between ACIC and On Time Bonding took the form of splitting a portion of the bond premium payment made by or on behalf of each individual criminal defendant for On Time Bonding's bail bonding services based on a pre-determined contracted amount, and in exchange for the financial backing provide by ACIC to On Time Bonding in the form of a surety bond.

(ACIC's Resp. 9.) ACIC cites to paragraphs 51, and 175 of the Amended Complaint in support of this assertion. Paragraph 51 of the Amended Complaint states, "On Time Bonding and ACIC shared profits. Whenever a criminal defendant, or an individual on behalf of a criminal defendant, paid a premium for bail bonding services, On Time Bonding and ACIC would each receive a portion of that premium." And Paragraph 175 states, "On Time Bonding and ACIC shared the profits gained in the course of their partnership by splitting the fees paid by or on behalf of criminal defendants for bail bonding services." As the Court can see, neither of these (nor any) allegations state that On Time and ACIC split premiums in a "pre-determined contracted amount" or that the split is "in exchange" for ACIC's financial backing.

6

ACIC mischaracterizes these allegations to try to make them actually resemble the caselaw it cites stating that payment of a commission does not create a partnership. But that caselaw is inapposite because, as ACIC acknowledges (but does not discuss), "the Complaint alleges that ACIC and On Time Bonding shared losses." (ACIC's Resp. 9.) The Tennessee Court of Appeals has discussed shared losses as a "significant fact," possibly the most significant fact, in the determination of whether an implied partnership exists. *Wantiez v. Carlson*, No. C.A. 637, 1986 WL 1151 (Tenn. Ct. App. Jan. 28, 1986) ("[P]erhaps the most significant fact is that Mr. Wantiez actually shares in and suffered the consequences of the business having losses"). The relationship between ACIC and On Time is not like that of a realtor and seller, where a realtor provides services and if those services are successful, the realtor receives a commission. Here, ACIC's financial backing makes it possible for On Time to bond out defendants such as Rivers, and when something goes wrong in the business, ACIC shares in the losses in the form of forfeited bonds. (*See* Am. Compl. ¶¶ 48-52.) ACIC's choice to ignore this second, "significant" piece of its partnership with On Time—shared losses—demonstrates ACIC's awareness that this significant fact is fatal to its motion.

Second, ACIC's argument that the Amended Complaint does not allege that ACIC participates in the business does not move the needle. "Partners that do not participate in running the business may be liable for partnership obligations like other partners." 59A Am. Jur. 2d Partnership § 44; *see also Boro v. Harris*, 81 Tenn. 36, 47 (1884) ("It is equally clear that James Boro was in reality a silent partner, and liable as such."). And "dormant," "silent," or "secret" partners are a common archetype in partnership law, and "[p]artnerships are often created in which a silent partner contributes money, credit, or property, and an active partner contributes his labor and openly manages the business." 59A Am. Jur. 2d Partnership § 44. That is exactly what the

7

Amended Complaint describes. On Time's role in the partnership is to find clientele, appear in court, secure the release of criminal defendants, ensure the criminal defendant complies with conditions of bond, and ensure that the criminal defendant appears in court; and ACIC provides financial backing to allow On Time to bond out more criminal defendants than it could alone. (Am. Compl. ¶¶ 48-52.). Moreover, contrary to ACIC's assertion that the Amended Complaint "does not contain any factual allegations that ACIC played any role in the release from custody," the Amended Complaint makes clear that ACIC played a crucial role in the release from custody. (Am. Compl. ¶¶ 38-41, 50, 75.) Specifically, ACIC's financial backing made it possible for On Time to bond out criminal defendants beyond its individual liquidity capability. (Am. Compl. ¶ 50.) As a result, On Time was able to post a bond to release Rivers from custody. (Am. Compl. ¶ 75.)

Finally, ACIC makes much of what the Amended Complaint does not allege, such as a written agreement or shared bank account. Certainly, a partnership agreement would leave no question about the existence of a partnership; but as the caselaw both parties cite makes clear, none of these things are necessary. The allegations that ACIC and On Time share the money earned and the losses incurred in furtherance of their business relationship is sufficient to allege the existence of a partnership.

Plaintiff cannot allege what he does not know about the inner workings of On Time and ACIC's business relationship. *See, e.g., Brook v. Sanofi-aventis U.S., LLC*, No. 2:14-CV-976, 2014 WL 7272243, at *4 (S.D. Ohio Dec. 18, 2014) ("To decide the issue against Plaintiff here on the understandably limited context of an initial complaint would perhaps not only require more than Plaintiff could reasonably be expected to give, but also would impose more stringent requirements than notice pleading under Federal Rule of Civil Procedure 8 demands."); *cf.*

*Branson v. Alliance Coal, LLC*, No. 4:19-CV-00155, 2021 WL 1031002, at *5 (W.D. Ky. Mar. 17, 2021) ("The remaining factors require insight into the partnership's internal structure, a difficult task without discovery." (citing *Malone v. Stanley Black & Decker, Inc.* 965 F.3d 499, 506 (6th Cir. 2020)) (considering a Rule 12(b)(2) motion)); *Iqbal*, 556 U.S. at 663-664 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.")  Especially so because ACIC is a "dormant," "silent," or "secret" partner who intentionally keeps out of the public eye and reaps profits from the shadows.  The law should not allow ACIC to "secretly share in the profits" of its partnership with On Time "without taking [its] share of the risks and bearing [its] share of the losses to a third person."  59A Am. Jur. 2d Partnership § 393.  But that is exactly what will occur if ACIC is able to escape on this threshold motion.

**CONCLUSION**

For the foregoing reasons, the Court should deny ACIC's motion.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Philip N. Elbert*
Philip Elbert, # 009430
Elizabeth Tipping, # 023066
Satchel Fowler, # 039624
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Telephone: (629)-312-1823
phil.elbert@wbd-us.com
liz.tipping@wbd-us.com
satchel.fowler@wbd-us.com

9

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing has been sent via the method indicated below on the following this the seventh day of November 2025.

| Via the Court's E-Filing System | Via U.S. Mail |
|---|---|
| Matt Pietsch<br>**Gordon Rees Scully Mansukhani**<br>4031 Aspen Grove Drive, Suite 290<br>Franklin, TN  37067<br>mpietsch@grsm.com<br><br>*Counsel for American Contractors Indemnity Company* | Tyrell White d/b/a On Time Bonding<br>704 Pin Oak Dr.<br>Antioch, TN 37013 |
| Joseph Zanger<br>**Zanger Law Firm**<br>135 Clif Garret Drive<br>White House, TN 37188<br>joe@zangerlaw.com<br><br>*Counsel for Nakeda Wilhoite and Freedom Monitoring, LLC* | Neicola McMillian<br>1018 32nd Ave N.<br>Nashville, TN 37209 |
| Bryan Lewis<br>**Bryan Lewis Law**<br>1300 Division St. Suite 307<br>Nashville, TN 37203<br>bryan@bryanlewislaw.com<br><br>Will Helou<br>**WSMLegal PLLC**<br>2817 West End Avenue, Suite 126-107<br>Nashville, TN 37203<br>whelou@wsmlegal.com<br><br>*Counsel for Brooke's Bail Bonding, LLC, Brooke Harlan-Evitts, and Continental Heritage Insurance Company* | Alisha Ridley<br>101 Davis Park Drive Unit 119<br>Smyrna, TN 37167 |

*/s/ Philip N. Elbert*

10