# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| ROBERT LANCE JOHANSEN as administrator of the estate of LAUREN JOHANSEN, | ) ) ) ) | |
| **Plaintiff** | ) ) | |
| | ) | 3:25-cv-00690 |
| v. | ) ) | |
| | ) | Judge Aleta Trauger |
| BROOKE'S BAIL BONDING, LLC et al. | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS BROOKE HARLAN-EVITTS AND BROOKE'S BAIL BONDING, LLC'S MOTION TO DISMISS

In their reply, Defendants Brooke's Bail Bonding, LLC ("Brooke's Bail") and Brooke Harlan-Evitts (jointly "Defendants") argue for the first time that the Amended Complaint does not plead an "affirmative act" for purposes of a § 1983 claim under a state-created danger theory of liability. Defendants offer almost no elaboration on this point other than a citation to a factually dissimilar case. Putting aside that an argument raised for the first time on reply is waived, *see, e.g., Flexider USA Corp. v. Richmond*, 528 F. Supp. 3d 820, 835 (M.D. Tenn. 2021), Defendants are also wrong. The Amended Complaint describes multiple examples of affirmative acts by Defendants that led to Lauren Johansen's death.

The state-created danger doctrine is an exception to the *DeShaney* rule relied upon by Defendants, and permits liability "when the state affirmatively acts in a way that either creates or increases a risk that an individual will be exposed to private acts of violence." *Weatherspoon v. City of Murfreesboro*, 2025 U.S. App. LEXIS 15102 at *5 (6th Cir. June 17, 2025). A plaintiff relying on this doctrine need only show: (1) an "affirmative act that created or increased the risk

that [the plaintiff] would be exposed to a private act of violence, (2) a special danger that placed [the plaintiff] (here plaintiff's decedent) specifically at risk as opposed to a risk to the public at large, and (3) that the state [actor] knew or should have known that its actions specifically endangered [the plaintiff's daughter]." *Id*. at \*5-6. Defendants do not dispute that the Amended Complaint alleges facts demonstrating that there was a special danger that placed Lauren Johansen specifically at risk or that the Defendants knew or should have known that their actions specifically endangered Ms. Johansen. Defendants focus solely on the first factor—the existence of an affirmative act.

The Sixth Circuit has recognized that the issue of whether conduct amounts to an affirmative act "is at times a difficult question." *Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020). As a result, courts often shift the focus to the question of whether the plaintiff was "safer *before* the state action than [she] was *after* it." *Id.* (citing *Koulta v. Merciez*, 477 F.3d 442, 445-46 (6th Cir. 2007) ("Rather than focusing on the often metaphysical question of whether officer behavior amounts to affirmative conduct or not, we have focused on whether the victim was safer before the state action than he was after it.")). Plaintiffs in this Circuit have been permitted to rely on the state-created danger doctrine where "the state took some action that increased the chances that a private actor would cause the plaintiff harm," as in these examples: (a) state actors interviewed a child in the presence of her alleged abusers; (b) department released personnel records that included the records of undercover officers; and (c) officer disclosed the name of a confidential informant to a drug dealer's companion. *See Lipman*, 974 F.3d at 744-47 (finding interview of child was sufficient to show an affirmative act, and discussing *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) (personnel records) and *Nelson v. City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017) (confidential informant)).

2

In this case it isn't even a close question. The Defendants procured, by their affirmative intervention, Lauren Johnson's killer's after-hours release from jail (a place where he posed no threat to Lauren Johansen). (Am. Compl. ¶¶ 68-72, 75-79.) A defendant bonded out of jail doesn't walk free. The defendants in this case assumed pretrial responsibility for Lauren Johansen's killer under their direct control and strict conditions, including confinement to Davidson County and no contact with his intended victim. (*Id*.) Moreover, the conditions of his pre-trial confinement to Davidson County were ordered to be monitored and enforced by the Defendants, who undertook responsibility for his pre-trial custody and control and were under court order to attach a properly programmed GPS monitoring device approved by the Court to his ankle to confine him to Davidson County. (*Id*. ¶¶ 68-72.)

The criminal court expressly ordered the Defendants to comply with other conditions as well, all of which were specifically intended to protect Lauren Johansen. The criminal court required, *inter alia*, Defendants to certify that they would return Rivers to jail if he violated his bond conditions. (*Id*. ¶ 71.) Defendants signed the criminal court's order and acknowledged this obligation even though they planned to immediately violate the bond conditions by using an unauthorized GPS monitoring company (owned and operated by Brooke's Bail's employee), affixing a GPS monitor that they knew was not programmed to prevent Rivers from leaving his place of community confinement, which permitted him to go to find Lauren in Mississippi; purchasing Rivers a bus ticket to go to Mississippi, and actually putting him on a bus to Mississippi to return to an address that he had provided, which they knew or were deliberately indifferent to the fact was Lauren Johansen's address. (*Id*. ¶¶ 71-72, 78, 82-84.)

Simply stated, Defendants affirmatively facilitated Rivers's violations of the conditions pursuant to which his pre-trial custody was remanded to them. They knowingly participated or

3

aided and abetted Rivers' contempt of the Court's order of Rivers's bond conditions. These violations were inherently dangerous because they degraded the court-imposed protections in place to protect Lauren Johansen—i.e. that Rivers remain in Davidson County, remanded to the custody and control of the bonding company defendants while monitored by the GPS monitoring company they were expressly ordered to use. They also further exposed Lauren Johansen to mortal danger by communicating to Rivers that he could leave Davidson County, Tennessee and return to Mississippi, without triggering a GPS alarm or fear of consequence, affirmatively releasing him from custody and control (in their office) yet again—even after they knew he was headed directly back to Mississippi and was violating the Court's order that he not be in contact with Lauren Johansen.

When Defendants did request Rivers to check back in at Brooke's Bail's office, it was not to arrest—or even admonish—him for violating his bond conditions. It was merely to address an issue with the GPS monitor's battery when the unit failed to continue to send a tracking signal— notifying the bonding company that Rivers was in Mississippi. (*Id.* ¶ 86.) They then sent him on his way to go right back to Mississippi, released in knowing, reckless, and deliberate violation of the conditions of his Court-ordered electronic confinement. They had Rivers back in Brooke's Bail's office—in Defendants' custody. (*Id.* ¶¶ 90-91). But unwilling to risk bond forfeiture and despite knowing Rivers had no place to stay in Nashville, the Defendants once again opened the door and released Rivers to return to Mississippi, where he killed Lauren Johansen. (Am. Compl. ¶¶ 93-96, 97-99.)

Knowing violation of a court order is an affirmative act (it is contempt); improperly and unlawfully procuring a dangerous felon's after-hours release from in-jail custody when his full bond premium had not yet even been paid and he was known to have no valid place to stay in

Davidson County is an affirmative act; putting a GPS monitor from a company Defendants knew was not approved by the Court and knowing it was not programmed to limit Rivers' return to Mississippi as ordered by the Court is an affirmative act; buying a killer a bus ticket and putting him on a bus to Mississippi to be in contact with a young woman he had had been arrested for savagely beating, in direct violation of the conditions of Rivers' transfer to the pre-trial custody and control of Defendants is an affirmative act; calling Rivers into their office to change out the battery in his improperly programmed and unapproved GPS monitor and then releasing him to go right back to Mississippi despite full knowledge of his multiple violations of the Court's order regarding his supervision and pre-trial confinement to Davidson County is an affirmative act; and actively working with Ms. Johansen's killer to conceal his violations from the Court in order to prevent a revocation of his bond is an affirmative act.

The Amended Complaint alleges, in the numerous examples described above, the various ways Defendants created the danger that killed Lauren Johansen. Further proof will be forthcoming as this case is prepared for trial. There is no question that Defendants' actions "cause[d]" Lauren Johansen "to be subjected" to deprivation of her constitutional rights. 42 U.S.C. § 1983. There is likewise no question that Lauren Johansen was safer *before* the Defendants took the actions described above than she was *after* those actions. *Lipman*, 974 F.3d at 744. Accordingly, the Court should reject Defendants' untimely and unfounded argument.

Respectfully submitted,

**Womble Bond Dickinson (US) LLP**

*/s/ Philip N. Elbert*
Philip Elbert, # 009430
Elizabeth Tipping, # 023066
Satchel Fowler, # 039624
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
Telephone: (629)-312-1823
phil.elbert@wbd-us.com
liz.tipping@wbd-us.com
satchel.fowler@wbd-us.com

6

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing has been sent via the method indicated below on the following this the 11th day of November 2025.

| Via the Court's E-Filing System | Via U.S. Mail |
|---|---|
| Matt Pietsch<br>**Gordon Rees Scully Mansukhani**<br>4031 Aspen Grove Drive, Suite 290<br>Franklin, TN  37067<br>mpietsch@grsm.com<br><br>*Counsel for American Contractors Indemnity Company* | Tyrell White d/b/a On Time Bonding<br>704 Pin Oak Dr.<br>Antioch, TN 37013 |
| Joseph Zanger<br>**Zanger Law Firm**<br>135 Clif Garret Drive<br>White House, TN 37188<br>joe@zangerlaw.com<br><br>*Counsel for Nakeda Wilhoite and Freedom Monitoring, LLC* | Neicola McMillian<br>1018 32nd Ave N.<br>Nashville, TN 37209 |
| Bryan Lewis<br>**Bryan Lewis Law**<br>1300 Division St. Suite 307<br>Nashville, TN 37203<br>bryan@bryanlewislaw.com<br><br>Will Helou<br>**WSMLegal PLLC**<br>2817 West End Avenue, Suite 126-107<br>Nashville, TN 37203<br>whelou@wsmlegal.com<br><br>*Counsel for Brooke's Bail Bonding, LLC, Brooke Harlan-Evitts, and Continental Heritage Insurance Company* | Alisha Ridley<br>101 Davis Park Drive Unit 119<br>Smyrna, TN 37167 |

*/s/ Philip N. Elbert*